UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                        )
                              )
FRANK ANTHONY ARENAS and      ) Case No. 14-11406-HRT
SARAH EVE ARENAS,             )          Chapter 7
                              )
          Debtor.             )
_____)

EVIDENTIARY HEARING REGARDING (A) UNITED STATES TRUSTEE'S
MOTION TO DISMISS DEBTORS' CASE UNDER 11 U.S.C. § 707(A)
(DOCKET #17) AND THE DEBTORS' OBJECTION (DOCKET #29); AND
(B) DEBTORS' MOTION TO CONVERT CHAPTER 7 CASE TO ONE UNDER
CHAPTER 13 PURSUANT TO 11 U.S.C. § 348(A) AND FED.R.BANKR.P.
1017(F)(2) (#23) AND THE UNITED STATES TRUSTEE'S OBJECTION
(#32)

BEFORE THE HONORABLE HOWARD R. TALLMAN
WEDNESDAY, JULY 30, 2014; 1:33 P.M.
DENVER, COLORADO

FOR THE DEBTOR:
David M. Serafin, Esq.

FOR THE TRUSTEE:
Alan Motes, Esq.

ALSO PRESENT:
Jolene Kopatich

Proceedings digitally recorded by court personnel.
Transcript produced by court-approved transcription service.

TRANSCRIPT REQUESTED BY:     HEIZER PAUL GRUESKIN LLP
TRANSCRIPT ORDERED ON:       AUGUST 12, 2014
TRANSCRIPT DELIVERED ON:     AUGUST 25, 2014
TRANSCRIPT PRICE:            $4.25 PER PAGE; $170.00

1                              I N D E X

2                          July 30, 2014

                                                                Page
3
     Opening statement on behalf of the Trustee                   4
4
     Opening statement on behalf of the Debtor                    6
5
     Closing statement on behalf of the Trustee                  30
6
     Closing statement on behalf of the Debtor                   32
7
     Rebuttal statement on behalf of the Trustee                 36
8

9

10   Trustee's
     Witness:              Direct    Cross    Redirect   Recross
11
     Frank Arenas            9         19
12

13

14

15   Debtor Exhibit:

16   1                                                           15

17

18

19

20

21

22

23

24

25

1          Denver, Colorado, July 30, 2014

2          (Time noted, 1:33 p.m.)

3          THE COURT:  We're here on the matter of Frank and

4    Sarah Arenas, it's 14-11406.  It's on for evidentiary hearing

5    regarding the U.S. Trustee's Motion to Dismiss the case under

6    Section 707(a), and the Debtor's objection to that and the

7    Debtor's Motion to Convert to Chapter 7 case to one under

8    Chapter 13 and the U.S. Trustee's response to that.

9          Let's take appearances, beginning with the Trustee's

10   counsel.

11         MR. MOTES:  Good afternoon, Your Honor.  Alan Motes,

12   appearing for the U.S. Trustee, and with me today also is

13   Jolene Kopatich.

14         THE COURT:  Thank you.

15         MR. SERAFIN:  Thank you, Your Honor.  David Serafin,

16   appearing with Debtor husband, Mr. Frank Arenas.

17         THE COURT:  Afternoon.

18         MR. ARENAS:  Good afternoon, sir.

19         THE COURT:  Mr. Motes, let me have you go first.  I

20   guess the question I've got for the parties is whether there is

21   much in the way of disputed facts.

22         MR. MOTES:  Your Honor, I don't think there's much in

23   the way of disputed facts.  We don't have a stipulation or

24   stipulated facts or anything like that, but I was anticipating

25   some probably a brief testimony from Mr. Arenas, that I expect

1    we'll just lay it all out.   It's a pretty simple issue

2    honestly.

3          THE COURT:   All right.   What I would anticipate is

4    I'd have you call him for your case, and then to save time, if

5    Mr. Serafin has questions for him, I would just have him ask

6    those at the same time so he's just not jumping up and down to

7    get on the witness stand.

8          MR. MOTES:   Sure.

9          THE COURT:   Okay?

10         MR. MOTES:   Okay.

11         THE COURT:   So I'll hear some opening statement if

12   you have it.

13         MR. MOTES:   Okay.   Thank you, Your Honor.   We, the

14   U.S. Trustee, did file a Motion to Dismiss under 707(a) for

15   cause.   The U.S. Trustee did, as Your Honor noted, file an

16   opposition to the Debtor's Motion to Convert to Chapter 13.

17   The basis for both of those pleadings is essentially the same,

18   and that's that the Debtors are engaged in a marijuana related

19   business activities that violate federal law.

20         As I mentioned, the U.S. Trustee only anticipates

21   calling one witness.   That would be Mr. Arenas.   I expect that

22   he will testify that the Debtors own a commercial property

23   located on Larimer Street, that that property has two units.

24   One of the units about 1,450 square feet, is leased out to a

25   marijuana dispensary.

1          I expect Mr. Arenas will testify that the other --

2     that another 500 square feet in that commercial building, he

3     utilizes to grow marijuana and then sell and distribute to his

4     clients.

5          Mr. Arenas is also expected to testify that those two

6     activities, serving as a landlord and serving as a grower of

7     marijuana are his only sources of income.  That, unfortunately,

8     Mrs. Arenas is disabled and her only source of income is a

9     modest disability payment, Social Security Disability payment

10    and pension income.

11         I also expect Mr. Arenas to testify that this case

12    was filed as a result of a dispute and litigation between Mr.

13    Arenas and that dispensary tenant.  It's called the Denver

14    Patients Group.

15         The bankruptcy estate consists of assets that violate

16    federal law, federal criminal law.  The space that's utilized

17    for growing marijuana and that's utilized as a dispensary, the

18    lease itself with the dispensary tenant and the marijuana

19    plants that are property of that bankruptcy estate.

20    That's in the Chapter 7.  Obviously the same property would be

21    utilized in a Chapter 13, if this case is converted, and the

22    Chapter 13 plan, again, if this case is converted, would be

23    funded in whole or in part with the proceeds of these marijuana

24    related businesses.

25         Both sides have cited the Rent-Rite Opinion that

1    this Court issued a little more than a year ago.  In that case

2    the Court held that it would not enforce the protections of the

3    Bankruptcy Code in aid of debtor whose actions constitute a

4    continuing violation of federal law.

5         To the U.S. Trustee, it seems like the same

6    principal would apply in this case, and it's for that reason

7    that the U.S. Trustee is requesting that this case be dismissed

8    and not converted to Chapter 13.  Thank you, Your Honor.

9         THE COURT:  Thank you.  Mr. Serafin.

10        MR. SERAFIN:  Your Honor, thank you.  As the Court

11   knows, Mr. and Mrs. Arenas filed this case as a Chapter 7, back

12   on February 12th, of 2014.  It was filed as a joint bankruptcy.

13   It's undisputed in this case, and Mr. Arenas will testify to

14   fact, that his spouse about three years ago had a stroke.  She

15   is unable to work.  Mr. Arenas will also testify and

16   corroborate the U.S. Trustee's statements that she has two

17   sources of passive income, a pension as well as some Social

18   Security benefits.

19        Debtors properly did file all the required schedules

20   with the U.S. Bankruptcy Court.  There is no dispute with the

21   parties and with the U.S. Trustee that Debtors -- the Form

22   22(a) was filed, Debtors passed what we call the means test.

23   They're otherwise, but for this marijuana issue, eligible for

24   Chapter 7 relief.  Mr. Arenas will testify as to that as well.

25        And just like with most Chapter 7 bankruptcies, Mr.

1    and Mrs. Arenas have significant unsecured debts listed in

2    Schedule F.  They're asking the Court for a fresh start.  They

3    filed this Petition out of necessity because they're unable to

4    pay their unsecured debts -- I should say secured and unsecured

5    debts, especially to the Denver Patients Group, at this time.

6        So U.S. Trustee is correct.  This case was filed by Mr.

7    and Mrs. Arenas, primarily because of a dispute with Mr.

8    Lourdes (phonetic), as well the Denver Patients Group.

9        Mr. Arenas now has a judgment against him for about

10   -- give or take, about $40,000 and that's accruing interest, I

11   believe.  That was entered at the State Court level.  So, it's

12   pretty simple from our standpoint.  The Arenas's filed for

13   bankruptcy because they can't pay Denver Patients Group and

14   there's ongoing collection activity, basically at the State

15   Court level.  If the Court dismisses this case, it's undisputed

16   that that collection activity will continue.

17       So, Mr. Arenas will also testify that he owns and

18   operates a business, which sells and distributes marijuana.

19   This is the only source from Mr. Arenas's business of wage, W-2

20   or self-employment income, whatever you want to call it.  So

21   Mr. Arenas will also testify that he is in compliance, and that

22   the business is in compliance with all State and local laws, as

23   well as State and local licensing requirements.

24       So, we are opposing the U.S. Trustee's Motion to

25   Dismiss the case.  We are asking the Court to keep the case

1   open.

2           And, Mr. Arenas's previous attorney filed a Motion

3   to Convert to Chapter 13, and that's the relief that we're

4   asking for today, is for the Court to allow Mr. Arenas to

5   convert to 13.  He's not necessarily asking for a full

6   discharge, but rather the ability -- the Court authorization to

7   pay back the unsecured debts under the protection of the

8   automatic stay over a three to five-year Plan.  So we're not

9   necessarily asking for a discharge.

10          So -- and I'll go into some of this in my -- if the

11  Court so allows -- my closing argument after Mr. Arenas

12  testifies on direct and cross.  But, you know, for now the

13  legal argument and brief is that marijuana is a controlled

14  substance under the Controlled Substance Act, but that doesn't

15  necessarily mean as a matter of law that Mr. Arenas -- and Mrs.

16  Arenas should be ineligible for Chapter 7 or Chapter 13.

17          So -- and again I'll save this for closing, but

18  we're asking that the Court reconsider and look into

19  overturning its previous Rent-Rite Decision from December of

20  2012.

21          Mr. Arenas is also going to testify that a dismissal

22  of this case outright would cause him and his family, not only

23  himself, but also Mrs. Arenas and their extended family, you

24  know, financial catastrophe.  So, again, we're just asking that

25  Mr. Arenas and Mrs. Arenas be given a fresh start and be

1   allowed to convert to Chapter 13.

2          So, but again, some of the legal arguments I'd like

3   the brief opportunity to go into during closing.

4          THE COURT:  Thank you.  Mr. Motes.

5          MR. MOTES:  Your Honor, the U.S. Trustee would call

6   Mr. Frank Arenas.

7          THE COURT:  Please come forward Mr. Arenas to be

8   sworn in.

9        FRANK ANTHONY ARENAS, PLAINTIFF'S WITNESS, SWORN

10          THE CLERK:  Thank you.  Please have a seat.

11                    DIRECT EXAMINATION

12  BY MR. MOTES:

13  Q    Mr. Arenas, would you please state your full name for the

14  record?

15  A    Frank Arenas.

16  Q    And Mr. Arenas, are you the Debtor in this bankruptcy

17  case?

18  A    I am.

19  Q    And is your wife Sarah Eve Arenas also a Debtor in this

20  bankruptcy case?

21  A    Yes, sir.

22  Q    I'm going to ask you about the property that's been

23  mentioned, 2863 Larimer Street.  You and your wife own that

24  building?

25  A    We do.

1    Q    And it's a commercial building?

2    A    That's correct.

3    Q    It has two units.  One of which is about 1,450 square

4    feet?

5    A    Yes, sir.

6    Q    And that unit is leased to Denver Patients Group?

7    A    That's -- that's correct, yes.

8    Q    And Denver Patients Group is a marijuana dispensary?

9    A    They are.

10   Q    My understanding is that that lease was signed in about

11   September of 2009?

12   A    That is correct.

13   Q    And it's also my understanding that that lease expires in

14   about 2021?

15   A    Currently, yes.  Yes, that's correct.

16   Q    It was mentioned briefly, that the case was filed due to

17   litigation between you and Denver Patients Group; is that

18   correct?

19   A    That is correct.

20   Q    And just to go in to some detail for that for the Court's

21   information.  Prior to your filing a bankruptcy case, you

22   sought to evict Denver Patients Group; is that correct?

23   A    That is correct.

24   Q    And my understanding, it's because the representatives of

25   Denver Patients Group had changed from the original tenants

1   under the lease; is that correct?

2   A      That is correct.  Yes, sir.

3   Q      So you brought an eviction action, but that was an

4   unsuccessful eviction action?

5   A      That's correct as well.  Yes, sir.

6   Q      And as part of that eviction proceeding, the State court

7   awarded attorney's fees to Denver Patients Group?

8   A      Yes, sir.

9   Q      And that's how they obtained that 40,000 or so judgment;

10  correct?

11  A      That's correct; yes.

12  Q      Also, in addition to that, Denver Patients Group asserted

13  counter claims against you?

14  A      Yes, sir.

15  Q      And those have not yet been litigated?

16  A      No, they have not.

17  Q      Okay.  You -- prior to filing for bankruptcy, you tried

18  to settle with Denver Patients Group, or you tried to work it

19  out; is that right?

20  A      Several times.  Yes, sir.

21  Q      But you were unsuccessful and faced with a continuing

22  prospect of litigation, you opted to seek relief under Chapter

23  7?

24  A      My wife and I did.  Yes, sir.

25  Q      Okay.  That's the one unit at 2863 Larimer Street.  The

1   other unit is about 500 square feet?

2   A      I'll just --

3   Q      Please.

4   A      -- for the record, it's the dispensary, Denver Patients

5   Group is in Unit 102.

6   Q      Okay.

7   A      And I operate my business out of 101.

8   Q      Okay.  And that's the 500 square foot unit?

9   A      Yes, sir.

10  Q      You grow marijuana in that unit?

11  A      I do.

12  Q      And then once it's grown, you cultivate it and then you

13  sell it to your clients?

14  A      I do.

15  Q      You had about 25 marijuana plants in your possession when

16  the case was filed?

17  A      That's approximately correct.  Yes, sir.

18  Q      Okay.  And then when it's time to sell the cultivated

19  marijuana, your clients basically come and pick it up; right?

20  A      That's correct.

21  Q      And they're -- you sell the plants for about $250 each?

22  A      It's roughly about that, sir.

23  Q      Okay.  It might depend on the weight or the size or

24  something?

25  A      That's correct.

1   Q      Okay.

2   A      And even, you know, the going market.

3   Q      Okay.  You have a license to grow and distribute

4   marijuana, issued by the City and County of Denver?

5   A      I do.

6   Q      Do you have approval from the Federal Drug Enforcement

7   Agency to grow marijuana?

8   A      I was not told that I needed that, to do that, when I

9   went and applied for my license and applied for the wholesale

10  license.  I had asked, "Is there anything else that I need to

11  do?"  And the lady at the City and County said, "No, as long as

12  you're not a dispensary and you're selling retail, this is all

13  you need."

14  Q      Okay.

15  A      And that's all I've had.

16  Q      You haven't applied for a certificate of registration

17  with -- from the Drug Enforcement Agency?

18  A      I was never told I had to.  I'm not even sure what that

19  is.

20  Q      Okay.  But the bottom line is, you don't have a

21  certificate of registration from the Drug Enforcement Agency?

22  A      No, sir.

23  Q      Okay.  Briefly, on your income and expenses.  I stated

24  earlier that it's my belief that your income from leasing space

25  to Denver Patients Group and your income from growing and

1    selling marijuana is your -- those two combined are your only

2    source of income; is that correct?

3    A     My source of income.  Yes, sir.

4    Q     Okay.  And then, of course, your wife has Social Security

5    Disability and she receives about $1,500 a month for that?

6    A     Yes, sir.

7    Q     And she also has a pension income of about $1,500 a

8    month?

9    A     It's roughly the same.  Yes, sir.

10   Q     And does she have any other source of income?

11   A     She does not.

12   Q     Okay.  I'm going to ask you if you will turn to Exhibit 1

13   in that binder in front of you.

14         Are you there?

15   A     United States Trustee Supplemental?

16   Q     Well, it's behind tab 1.

17   A     Oh, I'm sorry.  I'm sorry.  Okay.  Yes, sir, I've got it.

18   Q     And that document, you can leaf through it or look

19   through it, but I'm going to ask you if you recognize that

20   document to be the Petition, Schedules and Statement of

21   Financial Affairs that was filed in your bankruptcy case?

22   A     Yes, sir.  This is what we filed.  Yes, sir.

23   Q     Okay.  And did you provide the information that was used

24   to complete this document?

25   A     I did.

1    Q      And did you review the document before it was filed?

2    A      I don't recall doing that.

3    Q      Okay.  And let me ask, it was Mr. Dimitrov that filed

4    this Petition, Schedules and Statement of Financial Affairs?

5    A      Yes, sir.

6    Q      And did you authorize him to file it?

7    A      Yes, sir.

8            MR. MOTES:  Your Honor, I'm going to offer Exhibit

9    1.

10           MR. SERAFIN:  No objection, Your Honor.

11           THE COURT:  Exhibit 1 will be admitted.

12       (Trustee Exhibit No. 1 admitted in evidence.)

13   Q    BY MR. MOTES:  Mr. Arenas, much of this is self-

14   explanatory, but I did want to -- the reason I brought this up

15   is I wanted to maybe clarify one topic for the Court.  And I

16   think it's on page 14.  And this is titled Schedule D,

17   Creditors Holding Secured Claims.

18   A      Okay.  Page 15?

19   Q      It's page 14.  If you look in the upper right-hand

20   corner?

21   A      Okay.  Yes, sir.

22   Q      14 of 52?

23   A      Yes, sir.

24   Q      The first creditor that's listed is Baltazar and Lourdes

25   Lopez (phonetic)?

1    A      Yes, sir.

2    Q      That's listed as a construction loan for rental property

3    at 2863 Larimer Street.  But in fact that's a debt that you owe

4    to Baltazar and Lourdes Lopez, from the purchase of the

5    property; correct?

6    A      That is correct, yes.

7    Q      In other words, you purchased the property from Baltazar

8    and Lourdes Lopez?

9    A      That is correct.

10   Q      Okay.  You did do some substantial renovation to the

11   property and took out a loan to do that and that's on the top

12   of the next page, First National Bank?

13   A      Yes, sir.

14   Q      Okay.  And so where it says "Home Equity Line," and then

15   there's the amount of that claim.  That was a debt that you

16   incurred in order to renovate the Larimer Street project -- the

17   property?

18   A      Basically completely rebuild it.

19   Q      Okay.  And then, of course, on the prior page, on

20   Schedule D, Denver Patients Group, it's listed with that

21   $40,000 approximate claim, but that's the judgment that we've

22   been discussing that arose in the eviction proceeding?

23   A      Yes, sir.

24   Q      Okay.  Obviously this is a Chapter 7 case.  And, do you

25   understand that the Trustee that was assigned to this case is

1    Joe Rosania?

2    A      I do.

3    Q      Okay.  And do you understand that he originally filed a

4    Notice of No Distribution in this case?

5    A      I believe -- I believe that's correct, yes.

6    Q      And you understand that that indicated that he wasn't

7    going to administer or sell any assets?

8    A      That was my understanding.  Yes, sir.

9    Q      And do you recall that he withdrew that Notice of No

10   Distribution?

11   A      I vaguely remember that, sir.

12   Q      Do you recall that it was because Denver Patients Group

13   offered -- was in discussions with Mr. Rosania to purchase the

14   Larimer Street property?

15   A      Yes, sir, that is correct.

16   Q      Okay.  You are now seeking to convert this case to

17   Chapter 13 and I would like to know why.

18   A      Actually, sir, when I filed for bankruptcy, I originally

19   thought I was going to file Chapter 13.  I didn't know Chapter

20   13, Chapter 11, Chapter 7, 15, I wasn't aware of any of them.

21   I went in seeking bankruptcy to get relief through an attorney.

22   George Dimitrov, after going through my file and doing all my

23   paperwork, suggested that I file for Chapter 13 -- or Chapter

24   7, that my wife and I seek a Chapter 7 bankruptcy relief.

25   Q      Okay.  But at this point you're seeking to convert your

1    case to Chapter 13.  And I guess my question is, what do you

2    intend to accomplish in your Chapter 13 case?

3    A     Again, actually I didn't really know the differences in

4    Chapter 7, 13, or 11 going in.  My intention going in was to

5    repay creditors.  It wasn't to just not have to pay any

6    creditors.  I didn't know that was -- that was Chapter 7.

7    Q     Okay.

8    A     I had spoke with George and initially I had told him that

9    I would like to -- to repay my creditors, given time.

10   Q     Let me ask you more specifically.  With respect to the

11   Larimer Street building, do you intend to retain the Larimer

12   Street building?

13   A     I do.

14   Q     Do you have any -- do you intend to continue with the

15   cultivation of marijuana at that site?

16   A     That is our only source of income at this point, sir.

17   Q     Do you intend to reject the lease with Denver Patients

18   Group?

19   A     I do not.

20   Q     You intend to keep the lease?

21   A     Yes, sir.

22         MR. MOTES:  Okay.  No further questions, Your Honor.

23         THE COURT:  Thank you.

24         MR. MOTES:  Thank you, Mr. Arenas.

25         THE WITNESS:  Thank you, sir.

1          THE COURT:  Mr. Serafin?  I'll give you leeway to go

2     ahead and do direct examination too, if you'd like, as part of

3     your case.

4          MR. SERAFIN:  I'm sorry.  I didn't hear the first

5     part of what you said.

6          THE COURT:  I will give you leeway to go ahead and

7     ask the direct examination questions as well as part of your

8     case, so that we can move it along and that way Mr. Arenas

9     isn't getting up and down twice to meet those requirements.

10         MR. SERAFIN:  I hope this doesn't trip me up,

11    because I'm used to always going first, so.

12                         CROSS-EXAMINATION

13    BY MR. SERAFIN:

14    Q     Mr. Arenas, so again, you filed for a Chapter 7

15    bankruptcy back on February 12th of this year; correct?

16    A     That is correct.  My wife and I did.

17    Q     Okay.  And to the best of your knowledge, were the

18    schedules filed by Mr. Dimitrov and by yourself and by your

19    wife correct?

20    A     To my knowledge, yes, sir.

21    Q     Okay.  And you testified to that fact at the 341 hearing?

22    A     Yes, sir.

23    Q     Before Mr. Rosania?

24    A     Uh-huh (affirmative).

25    Q     Okay.  Is there -- so Mr. Motes asked you what happened,

1    or about the Denver Patients Group lawsuit.  Is there any

2    further elaboration that you'd like to provide to the Court as

3    to what happened with Mr. Lourdes -- with the Denver Patients

4    Group and how that judgment came about?

5    A      Well, it was a -- it was an eviction case.  I had -- the

6    original tenants on my lease merged with another set of

7    gentlemen and all I was trying to do was find out who was in my

8    building after the tenants on my lease left.  That's all I was

9    doing.  I was going next door, I had asked, "Can we sit down

10   with whoever is paying the bills over here, so I can find out

11   who is in my building?"

12         But, I made a big mistake by going at this pro se.  John

13   Lourdes, my tenant, had hired his attorneys and they came and

14   then it just got switched all around and it got to this point

15   where I have to file bankruptcy or, you know, I will just be --

16   they'll send us into financial ruin.

17   Q      It sounds like, Mr. Arenas, that there are the

18   possibility of some counter claims being made by Denver

19   Patients Group, that haven't been fully determined yet;

20   correct?

21   A      That is correct.  Yes, sir.

22   Q      And if this case -- this bankruptcy case is dismissed,

23   the counter claims by Denver Patients Group would be, to the

24   best of your understanding, litigated back in the State court;

25   correct?

1    A     That is correct.

2    Q     Do you have any knowledge or information as to what or

3    how much is being claimed?

4    A     I don't really know.  I just know it would probably be a

5    significant amount.

6    Q     Okay.  "Significant amount," as in -- do you have a

7    number in mind?

8    A     You know, it might be three times what I owe now.

9    Q     Okay, so three times.  If you owe $40,000 now, give or

10   take, three times would be over six figures, 120?

11   A     That's -- that's what I assume.  I --

12   Q     Just use the ball park numbers.

13   A     About 120, yes, sir.

14   Q     A significant number to be concerned about?

15   A     A very significant number to be concerned about.

16   Q     A significant number to possibly justify this filing?

17   A     That's a -- it is.  Without me filing, again, this will

18   send us to financial ruin.

19   Q     Okay.

20   A     My wife is no situation to go out and try to seek

21   employment right now, so our income is basically what we --

22   what we really need to live on right now.

23   Q     Okay.  Mr. Arenas, let's talk about your wife's situation

24   briefly.  U.S. Trustee mentioned, and I think you confirmed at

25   a deposition a month ago, that your wife has two sources of

 1    income.  I believe some type of a pension income?

 2    A     Yes, sir.  She was with the City and County of Denver as

 3    a clerk and recorder for 23 years, so she receives a pension

 4    from them.

 5    Q     What other source of income does she have?

 6    A     And she receives SSD, Social Security Disability.

 7    Q     Okay.  No wage income?

 8    A     She does not.

 9    Q     No self-employment income for her?

10    A     No, sir.

11    Q     No other source of income from anybody?

12    A     She has none.

13    Q     Okay.  What is your wife's age right now?

14    A     My wife is 51.

15    Q     Is she able to --

16    A     Excuse me, I'm sorry.  My wife is 52.

17    Q     Sorry.  Is your wife, Mrs. Arenas, in your opinion, being

18    her husband, is she ever -- ever able to work again?

19    A     That's pretty heart breaking.  But my wife is in a bad

20    situation.  She'll never be able to work.

21    Q     Okay.  Do you need a minute, Frank?

22    A     Sorry.

23    Q     It's okay.

24    A     It's been an ongoing problem with my wife, since July

25    11th, and it hasn't gotten any easier.

1    Q      July 11th of what year?

2    A      2011.

3    Q      Okay.  Let's talk about your income.  Let's get back to

4    your business, Frank.  So we talked about the two different

5    units.  We talked about what unit is -- what each unit is used

6    for, the square footage of each.  Anything about your business,

7    anything else that you want to tell the Court about?

8    A      No, no, sir.  Only that we are State compliant.  We've

9    been following all the laws.  We just had our building

10   inspected.  I went through almost a whole year of inspectors

11   coming through my building in 2013, for gosh, almost for the

12   whole year at least once or twice a month.  So I am completely,

13   100 percent compliant on that side, and I believe my tenant is

14   as well.

15   Q      Okay, Frank.  Is there any component or aspect of State

16   law that you have not, or the business has not ever been in

17   compliance with?

18   A      No, sir.  Not to my knowledge.

19   Q      Never.  Okay.  And there was a discussion as to obtaining

20   a certificate of approval by the U.S. Government, the DEA.  Is

21   there any other knowledge you have of that process?

22   A      I have no knowledge of that, none.

23   Q      Okay.

24   A      I've inquired with the City and County as to what is

25   required for my business.  They -- not once did they mention

1    that.

2    Q      Okay.  So there is no indication, no knowledge of whether

3    the government, the U.S. Government would grant your business

4    this requisite certificate?

5    A      I have no idea.  No, sir.

6    Q      Okay.  You mentioned on direct, Frank, a -- you mentioned

7    that the business does not sell -- doesn't engage in retail

8    sales?

9    A      That is correct.

10   Q      Can you maybe elaborate on that, to the Court?

11   A      I have a wholesale license that I wholesale out to my

12   patients to; that my patients basically fund the cultivation of

13   the product.  They fund it and I do the work for it.

14   Q      And do you do any business outside of the state?

15   A      Absolutely not.

16   Q      Okay.  Have you ever, or has the business ever done any

17   business outside of the state?

18   A      Oh, absolutely not.  No.

19   Q      Okay.  So are you testifying that 100 percent of your

20   customers are in Colorado?

21   A      100 percent of my customers are in Denver.

22   Q      In Denver, specifically?

23   A      Specifically.  Yes, sir.

24   Q      Okay.  Correct.  Or -- okay.  And you're aware that the

25   U.S. Trustee is obviously -- that that's why you're here today,

1   is requesting dismissal of the case; correct?

2   A      Yes, sir.

3   Q      Okay.  And have you -- one decision that may be of

4   influence today is called the Rent-Rite decision, issued by

5   this Court back in December of 2012.  Have you read or reviewed

6   that decision?

7   A      I really have not.  I have not.

8   Q      Okay.

9   A      I've heard it.  I really haven't looked through it

10  though.

11  Q      Okay.  At least as per our conversations, your

12  conversation with myself, your conversation with the U.S.

13  Trustee's Office, do you have an idea of, you know, what the

14  Court is saying in that decision?

15  A      You know, I'll be honest with you, I really don't.  Other

16  than it's a marijuana related business and that's -- that just

17  shows bad faith, I suppose.

18  Q      Okay.  Frank, if this case is dismissed today, as opposed

19  to you and your wife being allowed to convert to Chapter 13,

20  what else would happen to you and to your spouse and to your

21  business?

22  A      Well, I would continue the business.  But again, the

23  civil court would reappear and then we would be in deeper debt

24  than we are now.

25  Q      Okay.  And you testified, Frank, that even though this

1   case was previously filed by Mr. Dimitrov as a Chapter 7, you

2   -- and there was a subsequent motion to convert, that you want

3   the Court to convert the case to a 13; correct?

4   A      Yes, sir.

5   Q      As opposed to remaining in Chapter 7?

6   A      Again, that was my goal was to repay creditors.  I didn't

7   know what chapter that fell under.  But when I had spoke with

8   George I had told him, "I'm not trying to skirt any debt.  I'm

9   just trying manage it."  That's all.

10  Q      When you say "repay," do you mean the total amount of

11  debt?

12  A      You know, whatever would be allowed in Chapter 13.

13  Q      Okay.  And including the debt owed to Denver Patients

14  Group and Mr. Lourdes?

15  A      Yes, sir.

16  Q      Okay.  Can you tell the Court what your previous work

17  experience is?

18  A      Yes, sir.  I had worked for Anheuser Busch for 26-1/2

19  years, until 2007, when Anheuser Busch merged with InBev, a

20  Belgian company.  In fact, there's no more companies owned by

21  America anymore it seems like.

22         And shortly thereafter they came in and downsized and

23  they got rid of a lot of guys that had been there a long time,

24  namely myself, and they tried to reposition us, but I just -- I

25  wasn't physically able to do any of the work they were wanting

 1   me to, so I just took an early retirement.

 2   Q      And, I'm sorry.  How long ago was that?

 3   A      That was in 2000 -- it was about 2005.

 4   Q      2005.  Okay.  And what is your age now?

 5   A      Fifty-seven.

 6   Q      So that was back when you were 48, roughly.

 7   A      Well, I was about 50.  I was about 50 about then, 48, 50,

 8   I thought.  Something like that, yeah.

 9   Q      Okay.  Do you have any specific degrees, graduate

10   degrees, undergrad degrees, anything like that?

11   A      No, sir.

12   Q      Any specific, besides your job at Anheuser Busch or the

13   predecessor, any other specific job training for any other

14   industry?

15   A      No, sir.

16   Q      Okay.  If you were deemed ineligible for this Chapter 7

17   or Chapter 13 case, and had to move forward and say -- let me

18   explain it this way.  If you had to file for bankruptcy again

19   down the road and change the nature of your business, would

20   that be practical?

21   A      If that was an option that I was, you know, forced in to,

22   then that would probably -- you know, I would probably do that,

23   yes.

24   Q      If you had to find other work, in a non-marijuana type

25   business or job or W-2 or self employment, do you have any

1    guesstimate as to how long it would take?

2    A    I really don't know.  I'm not -- I'm not sure how many

3    companies are hiring 57-year old men any more, so it would

4    probably be a struggle.

5    Q    Okay.  Is there any reason to believe, Frank, that you

6    have not acted in good faith for the entirety of this case?

7    A    No, sir.  Not at all.

8    Q    Have you or your wife ever had any intent to mislead any

9    of your secured or unsecured creditors?

10   A    We have not.

11   Q    Okay.  Any intent to mislead the U.S. Trustee?

12   A    No, sir.

13   Q    Okay.  And you feel that you're entitled to a fresh

14   start?

15   A    That's what we were looking for.  Yes, sir.

16   Q    Albeit in a repayment payment plan in Chapter 13?

17   A    That's correct.

18   Q    Okay.  And you realize you're the only witness today.  Is

19   there anything else that either Mr. Motes or myself did not

20   cover?  You know, this is your chance.  Is there anything else

21   that you want to tell the Judge about the -- you know, about

22   your situation, about your wife's situation, your family

23   situation, the finances?

24   A    Well, I believe it's pretty much all out there now.  I

25   mean, we're looking for a fresh start.  We're looking to repay

1   our creditors, and again, just move forward.  We're not looking

2   to just go out the back door and never be seen again.  We want

3   to repay the creditors.  We want a fresh start and we want to

4   rebuild our credit.  We just want the opportunity, that's all.

5   Q      Running this business in question today, Frank, do you

6   feel that you've committed any type of crime?

7   A      I have not.  I am completely compliant with the State

8   law.

9            MR. SERAFIN:  I don't have any further questions

10  directly for Mr. Arenas.

11       What the U.S. Trustee stated was correct in that I don't

12  think there is any disputes as to the factual issues.  So I

13  think we'll stipulate to the exhibits prepared by the U.S.

14  Trustee today.  I think they only moved to admit one of them,

15  but I'm not sure what their position is as to that.  But our

16  exhibits are the same as the U.S. Trustees.

17           THE COURT:  Thank you.  Mr. Motes, any further

18  questions?

19           MR. MOTES:  No redirect, Your Honor.  Thank you.

20           THE COURT:  Okay.  Mr. Arenas, thank you for your

21  testimony.

22           THE WITNESS:  Thank you, sir.

23       (Witness excused, 2:08 p.m.)

24           THE COURT:  Any other witnesses, Mr. Motes?

25           MR. MOTES:  No, thank you, Your Honor.

1          THE COURT:  Thank you.  How about you, Mr. Serafin,

2     any other witnesses?

3          MR. SERAFIN:  No other witnesses.  I'd like the

4     chance to make a closing argument though.

5          THE COURT:  I'll give you that chance.

6          MR. SERAFIN:  All right.

7          THE COURT:  Mr. Motes, we'll let you go first.  Just

8     so you know, we've looked at and read all the submissions and

9     everything, so we're up to speed that way, so go ahead.

10         MR. MOTES:  Your Honor, and I'm not going to restate

11    anything that's in the pleadings that we've filed, I don't

12    think, except to summarize it.

13         THE COURT:  Uh-huh (affirmative).

14         MR. MOTES:  And that's to say that we do believe

15    that there is cause for dismissal under 707(a).  We believe

16    that there would be cause for dismissal under 1307(c) and as a

17    consequence, this case shouldn't be converted to Chapter 13 in

18    the first place under Marama.

19         I do realize that Rent-Rite was a Chapter 11 case.  I

20    think many of the principles that were discussed in the Rent

21    Rite opinion would be applicable here.  This, actually,

22    factually is a more -- there is more of a nexus to marijuana

23    and the Controlled Substances Act, than in the Rent-Rite case.

24         In this case -- in Rent-Rite, the Debtor owned a

25    warehouse and leased some of the space in the warehouse to

1    tenants that were engaged in the marijuana industry.   And

2    similarly, here  at the Debtors own a building and leased some

3    of the space in that building to a tenant engaged in the

4    marijuana industry.

5         But where this -- where there's even more of a nexus in

6    this case, though, is that the Debtor, at least Mr. Arenas

7    actually grows marijuana himself and distributes it.  So he is

8    directly -- not only as a landlord, but directly involved in

9    the marijuana business.

10        And moreover, this case was filed due to a dispute

11   between the Debtors and their tenant, the Denver Patients

12   Group.  In the Statement of Financial Affairs, the lawsuit that

13   was brought by Denver Patients Group is listed as a breach of

14   contract claim.

15        And so the, you know, the contract is a lease for a

16   medical marijuana dispensary and so the very dispute that gave

17   rise to this case is a dispute between two parties to an

18   agreement that violates federal law and the Debtors are asking

19   the Court -- and I understand the Debtors are in many ways

20   sympathetic, but they are asking the Court for the Federal

21   Government to intervene in a dispute between two parties to a

22   contract that violates federal law.

23        That's really the crux of this case.  I think that, you

24   know, the Debtors want to convert to Chapter 13 and the Court

25   really spoke to that in the Rent-Rite case.  In that case, the

1   court was talking about 1129(a)(3), but there is a corollary in

2   Chapter 13 to that as well, and what the Court said in Rent-

3   Rite is Title 11 USC Section 1129(a)(3) provides that:  A plan

4   may only be confirmed if it is proposed in good faith and not

5   by any means forbidden by law.

6        Because a significant portion of the Debtor's income is

7   derived from an illegal activity, Section 1129(a)(3) forecloses

8   any possibility of this Debtor obtaining confirmation of a Plan

9   that relies in any part on income derived from a criminal

10  activity.

11       The Debtor has no reasonable prospect of getting his Plan

12  confirmed.  Even if Section 1129 contained no such good faith

13  requirement, under no circumstance can the Court place itself

14  in the position of condoning the Debtor's criminal activity by

15  allowing it to utilize the shelter of the Bankruptcy Code while

16  continuing its unlawful practice of leasing space to those who

17  are engaged in the business of cultivating a Schedule I

18  Controlled Substance.  And that's at page 809 of the Rent-Rite

19  opinion.

20           So I think either way this case should not remain in

21  Chapter 7 nor should it be converted to a Chapter 13.  That's

22  the U.S. Trustees position, Your Honor.  Thank you.

23           THE COURT:  Thank you.  Go ahead, Mr. Serafin.

24           MR. SERAFIN:  Thank you.  To start my closing, I'd

25  like to point out, again, talk about Section 1325(b)(3), if I

1   can read the language again first.

2        "The plan has to have been proposed in good faith and not

3   by any means forbidden by law."  End quote.  I think the key

4   word in this part is the word, "law."  The statute doesn't

5   basically say, not by any means forbidden by federal law, it

6   just says the word, "law."

7        So, you know, here we are today, you know, kind of like a

8   sequel to the Rent-Rite decision.  You have this inherent

9   conflict with the federal law.  You know, federal law under the

10  Controlled Substances Act basically states that marijuana

11  remains to this day, a Schedule I Controlled Substance.

12       State law, you know, per local referendum and now State

13  law now says here it's legal to use, cultivate, and/or grow

14  marijuana.  So I think we obviously have a conflict here.

15       So our interpretation of 1325(b)(3) is that, you

16  know, based on Mr. Arenas's testimony, is at this point and

17  definitely has been proposed in good faith, and that there is

18  not any means forbidden by federal law.

19       So again, the statute's ambiguous as to law.  If you look

20  at State law, then there is nothing that prevents confirmation

21  of a Chapter 13 Plan for Mr. Arenas to pay back the debt over a

22  three to five year amortized payment plan.

23       So if you look at State law, 1325(b)(3), you know, that

24  express wording of that statute, and I don't know of any case

25  law that contradicts that besides, you know, what Mr. Motes is

1   quoting from the Rent-Rite decision is -- I think the element's

2   met.

3        And I'll also point out, obviously Rent-Rite was a

4   Chapter 11 case, so 1325, I don't think was even applied,

5   really, in the Rent-Rite case, if I'm reading it correctly.

6        But getting back to this conflict with Federal law.  I

7   don't think it's inappropriate to mention, to go back to the

8   U.S. Constitution, to the 10th Amendment of the U.S.

9   Constitution.  I know sometimes in modern times it's forgotten

10  about, but it states that, the power's not delegated to the

11  United States by Constitution, nor prohibited by it to the

12  states are reserved to the states respectively, or to the

13  people.

14       So, I think this is the perfect case, as well as what the

15  Rent-Rite case, that helps define the concept of federalism, so

16  we have a conflict between Federal law and -- which says that

17  Mr. Arenas, or at least according to this -- the Court's

18  interpretation says that Mr. Arenas and Mrs. Arenas are not

19  eligible for bankruptcy, versus State law, which would clearly

20  say that they are eligible for bankruptcy, so.

21       Also on top of that, I think when Congress originally

22  drafted and made it law, the Controlled Substances Act, it was

23  for purposes to prosecute the criminal law, not to limit

24  somebodies eligible -- eligibility for any type of bankruptcy

25  or any type of fresh start or any type of debt relief.

1        So, you know, if you possess or distribute cocaine,

2    that's a federal crime.   If you possess or distribute heroin,

3    that's a federal crime.   So marijuana at this point has not

4    been removed from the purview of that statute, but again,

5    nothing in the legislative history, and the reason for that

6    statute suggests that additional steps should be taken to, you

7    know, expand federal power under federalism to -- for a result

8    like this.   A draconian result where Mr. and Mrs. Arenas are

9    arbitrarily, you know, not eligible for any type of bankruptcy.

10       So I think it's a false -- I think it's an arbitrary

11   distinction to judicially distinguish between a family such as

12   the Arenas, as well as others, you know, with similar income,

13   who also work for a living, who also have wage income, who also

14   run a business and support their family.   I think it's

15   arbitrary to say that those folks, every one of them, you know,

16   should be eligible for this or that chapter of bankruptcy,

17   versus the Arenas', who basically -- if the Rent-Rite decision

18   is given precedence here and the Motion to Dismiss is upheld,

19   they're basically stuck.   They're basically stuck under a

20   technicality.

21           So, besides the Constitutional arguments that we

22   have, I think the Court should look at the Arenas' having to

23   suffer through such a draconian -- and when I say "draconian"

24   as an understatement -- such a draconian result.

25           So we'd also submit that as a Federal Judge, you know, I

1    think this Court has the power to strike down this provision or

2    at least interpret this provision of the Controlled Substances

3    Act.  You know, we'd submit that Mr. Arenas's business is

4    completely intrastate, that there is no interstate commerce

5    clause jurisdiction by Congress to regulate this business.

6         So I know that issue has been litigated before the U.S.

7    Supreme Court and there is some authority against us.  But,

8    again, you know, we're looking at -- just to summarize, I think

9    1325(b)(3) does not preclude a conversion and a possible

10   successful result in Chapter 13.

11        And again, also principles of federalism and then,

12   finally, you know, the Court's expansion of Federal law and

13   Federal jurisdiction and the Controlled Substances Act, it's

14   extending too far.

15        You know, again, if you look at the legislative purpose

16   behind that statute, it wasn't meant to extend to a situation

17   where Mr. and Mrs. Arenas are denied -- denied bankruptcy

18   relief.  Thank you.

19             THE COURT:  Thank you.  Mr. Motes, anything further?

20             MR. MOTES:  Your Honor, just to follow up on a

21   couple of points.  I think Mr. Serafin alluded to Congress not

22   intending to limit access to the Bankruptcy Courts for people

23   engaged in crime.  I think that's what I understood.

24        I think that the statute is quite clear, the 1325, I

25   suppose (b)(3).  But that a plan in a Chapter 13 case and in

1    Chapter 11, cannot be proposed by any means in violation of --

2    that, "The plan cannot be proposed by any means forbidden by

3    law."

4         That's Congress's attempt to get that concept in, that

5    you can't propose a plan if it violates the law.  Law is not

6    ambiguous.  Law includes Federal law.  And this is a Federal

7    Court.  The Court applies Federal law on a daily basis and law

8    used in that context is not ambiguous.

9         The other thing I would note is that Mr. Serafin

10   discussed the conflict between Federal law and State law.  That

11   was also a subject that was discussed at some length in the

12   Rent-Rite opinion, that there is no conflict preemption here.

13        The Federal statute criminalizes the possession,

14   distribution, et cetera, of marijuana.  The State statute

15   apparently does not.  But that's not a conflict.  I suppose it

16   would be a conflict if the State statute required the use of

17   marijuana or something like that.  Well, then there would be a

18   conflict between Federal law and State law.

19        I think that Your Honor referenced, actually in the Rent-

20   Rite opinion, that the Constitutional amendment made it clear

21   that its provisions applied to State law only.  So there really

22   isn't a conflict between State and Federal law.  The Federal

23   law is that, you know, criminalizes the distribution and

24   possession of marijuana.  No plan can be confirmed under

25   Chapter 13 that's funded from that activity.  Thank you.

1          THE COURT:  Thank you.  Mr. Serafin, because you had

2     the -- you've got the Debtor's Motion to Convert, I'll give you

3     the last word with respect to it.  If you have any further

4     argument.

5          MR. SERAFIN:  I don't have any further argument.

6     We're obviously asking the Court to grant the Motion to Convert

7     and not dismiss the case.

8          THE COURT:  Okay.  All right.  Well, we're going to

9     consider what we've heard here today and make our decision

10    based upon it.

11         Laws get enacted in various jurisdictions, both

12    Federal and State.  How those laws work together, if they do,

13    or how those laws need to be interpreted under a particular

14    fact situation, is the job of the courts, and so we will try to

15    take a look at this with some fresh eyes.

16    Obviously we've done work with respect to it under a

17    previous case, but there have been some issues raised and we'll

18    take a look at those and see if they create a difference or

19    whether it's a distinction without a difference.  We'll just

20    have to examine that a little closely and see what we come up

21    with.

22         But Mr. Arenas, you need to know I appreciate your

23    efforts here today and your testimony.  It helps provide a face

24    to the matters that we read in the papers that are submitted,

25    and I very much appreciate the situation you're in.  And we'll

1    just have to see how that fact situation goes with what the law

2    that's been created by Congress and the State of Colorado, what

3    your situation means within the context of those two

4    jurisdictions.

5         So, thank you.  We'll be in recess.

6              (Time noted, 2:23 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    STATE OF COLORADO      )

2                           )  ss.        CERTIFICATE

3    COUNTY OF DENVER       )

4

5            I, Christopher Boone, Certified Electronic

6    Court Reporter and Notary Public within and for the

7    State of Colorado, certify that the foregoing is a

8    correct transcription from the digital recording of

9    the proceedings in the above-entitled matter.

10

11           I further certify that I am neither counsel

12   for, related to, nor employed by any of the parties

13   to the action in which this hearing was taken, and

14   further that I am not financially or otherwise

15   interested in the outcome of the action.

16

17           In witness whereof, I have affixed my

18   signature this 25th day of August, 2014.

19

20   My commission expires August 16, 2018.

21

22

23   _____

24   Christopher Boone,

25   AAERT Certified Electronic Court Reporter
```

## WORD INDEX

**< $ >**
**$1,500** 14:5, 7
**$170.00** 1:1
**$250** 12:21
**$4.25** 1:1
**$40,000** 7:10
16:21 21:9

**< § >**
**§** 1:1, 1

**< 1 >**
**1** 2:16 14:12, 16
15:9, 11, 12
**1,450** 4:24 10:3
**1:33** 1:1 3:2
**100** 23:13 24:19,
21
**101** 12:7
**1017** 1:1
**102** 12:5
**10th** 34:8
**11** 1:1, 1 17:20
18:4 30:19 32:3
34:4 37:1
**1129** 32:1, 3, 7, 12
**11th** 22:25 23:1
**12** 1:1
**120** 21:10, 13
**12th** 6:12 19:15
**13** 1:1 3:8 4:16
5:21, 22 6:8 8:3,
5, 16 9:1 17:17, 19,
20, 23 18:1, 2, 4
25:19 26:3, 12
27:17 28:16 30:17
31:24 32:2, 21
33:21 36:10, 25
37:25
**1307** 30:16
**1325** 32:25 33:15,
23 34:4 36:9, 24
**14** 15:16, 19, 22
**14-11406** 3:4
**14-11406-HRT** 1:1
**15** 2:16 15:18
17:20
**16** 40:20
**17** 1:1
**19** 2:10

**< 2 >**
**2** 1:1 26:18
**2:08** 29:23
**2:23** 39:6
**2000** 27:3

**2005** 27:3, 4
**2007** 26:19
**2009** 10:11
**2011** 23:2
**2012** 8:20 25:5
**2013** 23:11
**2014** 1:1, 1, 1 2:2
3:1 6:12 40:18
**2018** 40:20
**2021** 10:14
**22** 6:22
**23** 1:1 22:3
**25** 1:1 12:15
**25th** 40:18
**26-1** 26:18
**2863** 9:23 11:25
16:3
**29** 1:1

**< 3 >**
**3** 32:1, 3, 7, 25
33:15, 23 36:9, 25
**30** 1:1 2:2, 2 3:1
**32** 1:1 2:2
**341** 19:21
**348** 1:1
**36** 2:2

**< 4 >**
**4** 2:2
**40,000** 11:9
**48** 27:6, 7

**< 5 >**
**50** 27:7, 7, 7
**500** 5:2 12:1, 8
**51** 22:14
**52** 15:22 22:16
**57-year** 28:3

**< 6 >**
**6** 2:2

**< 7 >**
**7** 1:1, 1 3:7 5:20
6:11, 24, 25 8:16
11:23 16:24 17:20,
24, 24 18:4, 6
19:14 26:1, 5
27:16 32:21
**707** 1:1 3:6 4:14
30:15

**< 8 >**
**809** 32:18

**< 9 >**
**9** 2:10

**< A >**
**AAERT** 40:25
**ability** 8:6
**able** 22:15, 18, 20
26:25
**above-entitled** 40:9
**Absolutely** 24:15,
18
**access** 36:22
**accomplish** 18:2
**accruing** 7:10
**Act** 8:14 30:23
33:10 34:22 36:3,
13
**acted** 28:6
**action** 11:3, 4
40:13, 15
**actions** 6:3
**activities** 4:19 5:6
**activity** 7:14, 16
32:7, 10, 14 37:25
**addition** 11:12
**additional** 35:6
**administer** 17:7
**admit** 29:14
**admitted** 15:11, 12
**Affairs** 14:21 15:4
31:12
**affirmative** 19:24
30:13
**affixed** 40:17
**afternoon** 3:11, 17,
18
**age** 22:13 27:4
**Agency** 13:7, 17, 21
**ago** 6:1, 14 21:25
27:2
**agreement** 31:18
**ahead** 19:2, 6
30:9 32:23
**aid** 6:3
**Alan** 1:1 3:11
**Albeit** 28:16
**allow** 8:4
**allowed** 9:1 25:19
26:12
**allowing** 32:15
**allows** 8:11
**alluded** 36:21
**ambiguous** 33:19
37:6, 8
**Amendment** 34:8
37:20
**America** 26:21
**amortized** 33:22
**amount** 16:15
21:5 26:10
**amount,** 21:6

**Anheuser** 26:18, 19
27:12
**ANTHONY** 1:1 9:9
**anticipate** 4:3
**anticipates** 4:20
**anticipating** 3:24
**anybody** 22:11
**anymore** 26:21
**apparently** 37:15
**appearances** 3:9
**appearing** 3:12, 16
**applicable** 30:21
**applied** 13:9, 9, 16
34:4 37:21
**applies** 37:7
**apply** 6:6
**appreciate** 38:22,
25
**approval** 13:6
23:20
**approximate** 16:21
**approximately**
12:17
**arbitrarily** 35:9
**arbitrary** 35:10, 15
**ARENAS** 1:1, 1
2:10 3:4, 16, 18, 25
4:21 5:1, 5, 8, 11,
13 6:11, 13, 15, 24
7:1, 7, 9, 17, 21
8:4, 11, 15, 16, 21,
23, 25, 25 9:6, 7, 9,
13, 15, 16, 19 15:13
18:24 19:8, 14
20:17 21:23 22:17
29:10, 20 31:6
33:21 34:17, 18, 18
35:8, 12, 17, 22
36:17 38:22
**Arenas's** 7:12, 19
8:2 33:16 36:3
**argument** 8:11, 13
30:4 38:4, 5
**arguments** 9:2
35:21
**arose** 16:22
**asked** 13:10 19:25
20:9
**asking** 7:2, 25 8:4,
5, 9, 18, 24 31:18,
20 38:6
**aspect** 23:15
**asserted** 11:12
**assets** 5:15 17:7
**assigned** 16:25
**assume** 21:11
**attempt** 37:4
**attorney** 8:2 17:21

attorneys 20:*13*
attorney's 11:*7*
AUGUST 1:*1, 1*
40:*18, 20*
authority 36:*7*
authorization 8:*6*
authorize 15:*6*
automatic 8:*8*
awarded 11:*7*
aware 17:*20* 24:*24*

< B >
back 6:*11* 8:*7*
19:*15* 20:*24* 23:*3*
25:*5* 27:*6* 29:*2*
33:*21* 34:*6, 7*
bad 22:*19* 25:*17*
ball 21:*12*
Baltazar 15:*24*
16:*4, 7*
Bank 16:*12*
bankruptcies 6:*25*
BANKRUPTCY 1:*1*
5:*15, 19* 6:*3, 12, 20*
7:*13* 9:*16, 20*
10:*21* 11:*17* 14:*21*
17:*18, 21, 24* 19:*15*
20:*15, 22* 27:*18*
32:*15* 34:*19, 20, 24*
35:*9, 16* 36:*17, 22*
based 33:*16* 38:*10*
basically 7:*14*
12:*19* 16:*18* 21:*21*
24:*12* 33:*5, 10*
35:*17, 19, 19*
basis 4:*17* 37:*7*
beginning 3:*9*
behalf 2:*2, 2, 2, 2, 2*
Belgian 26:*20*
belief 13:*24*
believe 7:*11* 17:*5,*
*5* 22:*1* 23:*13* 28:*5,*
*24* 30:*14, 15*
benefits 6:*18*
best 19:*17* 20:*24*
big 20:*12*
bills 10:*10*
binder 14:*13*
Boone 40:*5, 24*
bottom 13:*20*
breach 31:*13*
breaking 22:*19*
brief 3:*25* 8:*13*
9:*3*
briefly 10:*16*
13:*23* 21:*24*
brought 11:*3*
15:*14* 31:*13*

building 5:*2* 9:*24*
10:*1* 18:*11, 12*
20:*8, 11* 23:*9, 11*
31:*2, 3*
Busch 26:*18, 19*
27:*12*
business 4:*19*
7:*18, 19, 22* 12:*7*
23:*4, 6, 16, 25* 24:*3,*
*7, 14, 16, 17* 25:*16,*
*21, 22* 27:*19, 25*
29:*5* 31:*9* 32:*17*
35:*14* 36:*3, 5*
businesses 5:*24*

< C >
call 4:*4* 6:*22*
7:*20* 9:*5*
called 5:*13* 25:*4*
calling 4:*21*
CASE 1:*1, 1, 1* 3:*5,*
*7* 4:*4* 5:*11, 21, 22*
6:*1, 6, 7, 11, 13*
7:*6, 15, 25, 25* 8:*22*
9:*17, 20* 10:*16, 21*
12:*16* 14:*21* 16:*24,*
*25* 17:*4, 16* 18:*1, 2*
19:*3, 8* 20:*5, 22, 22*
25:*1, 18* 26:*1, 3*
27:*17* 28:*6* 30:*17,*
*19, 23, 24* 31:*6, 10,*
*17, 23, 25, 25* 32:*20*
33:*24* 34:*4, 5, 14,*
*15* 36:*25* 38:*7, 17*
catastrophe 8:*24*
cause 4:*15* 8:*22*
30:*15, 16*
certificate 13:*16,*
*21* 23:*20* 24:*4*
40:*2*
Certified 40:*5, 25*
certify 40:*7, 11*
cetera 37:*14*
chance 28:*20* 30:*4,*
*5*
change 27:*19*
changed 10:*25*
CHAPTER 1:*1, 1, 1*
3:*7, 8* 4:*16* 5:*20,*
*21, 22* 6:*8, 11, 24,*
*25* 8:*3, 16, 16* 9:*1*
11:*22* 16:*24* 17:*17,*
*19, 19, 20, 20, 23, 23,*
*24* 18:*1, 2, 4, 6*
19:*14* 25:*19* 26:*1,*
*5, 7, 12* 27:*16, 17*
28:*16* 30:*17, 19*
31:*24* 32:*2, 21, 21*

33:*21* 34:*4* 35:*16*
36:*10, 25* 37:*1, 25*
Christopher 40:*5,*
*24*
circumstance 32:*13*
cited 5:*25*
City 13:*4, 11* 22:*2*
23:*24*
civil 25:*23*
claim 16:*15, 21*
31:*14*
claimed 21:*3*
claims 11:*13*
15:*17* 20:*18, 23*
clarify 15:*15*
clause 36:*5*
clear 36:*24* 37:*20*
clearly 34:*19*
CLERK 9:*10* 22:*3*
clients 5:*4* 12:*13,*
*19*
closely 38:*20*
Closing 2:*2, 2*
8:*11, 17* 9:*3* 30:*4*
32:*24*
cocaine 35:*1*
Code 6:*3* 32:*15*
collection 7:*14, 16*
COLORADO 1:*1, 1*
3:*1* 24:*20* 39:*2*
40:*1, 7*
combined 14:*1*
come 9:*7* 12:*19*
38:*20*
coming 23:*11*
commerce 36:*4*
commercial 4:*22*
5:*2* 10:*1*
commission 40:*20*
committed 29:*6*
companies 26:*20*
28:*3*
company 26:*20*
complete 14:*24*
completely 16:*18*
23:*12* 29:*7* 36:*4*
compliance 7:*21,*
*22* 23:*17*
compliant 23:*8, 13*
29:*7*
component 23:*15*
concept 34:*15* 37:*4*
concerned 21:*14, 15*
condoning 32:*14*
confirmation 32:*8*
33:*20*
confirmed 21:*24*
32:*4, 12* 37:*24*

conflict 33:*9, 14*
34:*6, 16* 37:*10, 12,*
*15, 16, 18, 22*
Congress 34:*21*
36:*5, 21* 39:*2*
Congress's 37:*4*
consequence 30:*17*
consider 38:*9*
consists 5:*15*
constitute 6:*3*
Constitution 34:*8,*
*9, 11*
Constitutional
35:*21* 37:*20*
construction 16:*2*
contained 32:*12*
context 37:*8* 39:*3*
continue 7:*16*
18:*14* 25:*22*
continuing 6:*4*
11:*21* 32:*16*
contract 31:*14, 15,*
*22*
contradicts 33:*25*
controlled 8:*13, 14*
30:*23* 32:*18* 33:*10,*
*11* 34:*22* 36:*2, 13*
conversation 25:*12,*
*12*
conversations
25:*11*
conversion 36:*9*
CONVERT 1:*1* 3:*7*
4:*16* 8:*3, 5* 9:*1*
17:*16, 25* 25:*19*
26:*2, 3* 31:*24*
38:*2, 6*
converted 5:*21, 22*
6:*8* 30:*17* 32:*21*
corner 15:*20*
corollary 32:*1*
correct 7:*6* 10:*2, 7,*
*12, 15, 18, 19, 22, 23*
11:*1, 2, 5, 10, 11*
12:*17, 20, 25* 14:*2*
16:*5, 6, 9* 17:*5, 15*
19:*15, 16, 19* 20:*20,*
*21, 25* 21:*1* 24:*9,*
*24* 25:*1* 26:*3*
28:*17* 29:*11* 40:*8*
correctly 34:*5*
corroborate 6:*16*
counsel 3:*10* 40:*11*
counter 11:*13*
20:*18, 23*
County 13:*4, 11*
22:*2* 23:*24* 40:*3*
couple 36:*21*
course 14:*4* 16:*19*

**COURT** 1:*1, 1* 3:*3, 14, 17, 19* 4:*3, 9, 11* 6:*1, 2, 9, 10, 20* 7:*2, 11, 15, 15, 25* 8:*4, 6, 11, 18* 9:*4, 7* 11:*6* 15:*11, 15* 18:*23* 19:*1, 6* 20:*2, 24* 23:*7* 24:*10* 25:*5, 14, 23* 26:*3, 16* 29:*17, 20, 24* 30:*1, 5, 7, 13* 31:*19, 20, 24* 32:*1, 2, 13, 23* 35:*22* 36:*1, 7, 19* 37:*7, 7* 38:*1, 6, 8* 40:*6, 25*
**court-approved** 1:*1*
**Courts** 36:*22* 38:*14*
**Court's** 10:*20* 34:*17* 36:*12*
**cover** 28:*20*
**create** 38:*18*
**created** 39:*2*
**credit** 29:*4*
**creditor** 15:*24*
**Creditors** 15:*17* 18:*5, 6, 9* 26:*6* 28:*9* 29:*1, 3*
**crime** 29:*6* 35:*2, 3* 36:*23*
**criminal** 5:*16* 32:*9, 14* 34:*23*
**criminalizes** 37:*13, 23*
**Cross** 2:*10* 8:*12*
**CROSS-EXAMINATION** 19:*12*
**crux** 31:*23*
**cultivate** 12:*12* 33:*13*
**cultivated** 12:*18*
**cultivating** 32:*17*
**cultivation** 18:*15* 24:*12*
**Currently** 10:*15*
**customers** 24:*20, 21*

**< D >**
**daily** 37:*7*
**David** 1:*1* 3:*15*
**day** 33:*11* 40:*18*
**DEA** 23:*20*
**debt** 16:*3, 15* 25:*23* 26:*8, 11, 13* 33:*21* 34:*25*
**DEBTOR** 1:*1, 1* 2:*2, 15* 3:*16* 6:*3* 9:*16, 19* 30:*24* 31:*6* 32:*8, 11*

**DEBTORS** 1:*1, 1, 1* 4:*18, 22* 6:*19, 21, 22* 31:*2, 11, 18, 19, 24*
**Debtor's** 3:*6, 7* 4:*16* 32:*6, 14* 38:*2*
**debts** 7:*1, 4, 5* 8:*7*
**December** 8:*19* 25:*5*
**Decision** 8:*19* 25:*3, 4, 6, 14* 33:*8* 34:*1* 35:*17* 38:*9*
**deemed** 27:*16*
**deeper** 25:*23*
**define** 34:*15*
**definitely** 33:*17*
**degrees** 27:*9, 10, 10*
**delegated** 34:*10*
**DELIVERED** 1:*1*
**denied** 36:*17, 17*
**DENVER** 1:*1* 3:*1* 5:*13* 7:*5, 8, 13* 10:*6, 8, 17, 22, 25* 11:*7, 12, 18* 12:*4* 13:*4, 25* 16:*20* 17:*12* 18:*17* 20:*1, 3, 18, 23* 22:*2* 24:*21, 22* 26:*13* 31:*11, 13* 40:*3*
**depend** 12:*23*
**deposition** 21:*25*
**derived** 32:*7, 9*
**detail** 10:*20*
**determined** 20:*19*
**difference** 38:*18, 19*
**differences** 18:*3*
**different** 23:*4*
**digital** 40:*8*
**digitally** 1:*1*
**Dimitrov** 15:*3* 17:*22* 19:*18* 26:*1*
**Direct** 2:*10* 8:*12* 9:*11* 19:*2, 7* 24:*6*
**directly** 29:*10* 31:*8, 8*
**Disability** 5:*9, 9* 14:*5* 22:*6*
**disabled** 5:*8*
**discharge** 8:*6, 9*
**discussed** 30:*20* 37:*10, 11*
**discussing** 16:*22*
**discussion** 23:*19*
**discussions** 17:*13*
**DISMISS** 1:*1* 3:*5* 4:*14* 7:*25* 35:*18* 38:*7*
**dismissal** 8:*21* 25:*1* 30:*15, 16*

**dismissed** 6:*7* 20:*22* 25:*18*
**dismisses** 7:*15*
**dispensary** 4:*25* 5:*13, 17, 18* 10:*8* 12:*4* 13:*12* 31:*16*
**dispute** 5:*12* 6:*20* 7:*7* 31:*10, 16, 17, 21*
**disputed** 3:*21, 23*
**disputes** 29:*12*
**distinction** 35:*11* 38:*19*
**distinguish** 35:*11*
**distribute** 5:*3* 13:*3* 35:*1, 2*
**distributes** 7:*18* 31:*7*
**Distribution** 17:*4, 10* 37:*14, 23*
**DISTRICT** 1:*1*
**DOCKET** 1:*1, 1*
**document** 14:*18, 20, 24* 15:*1*
**doing** 15:*2* 17:*22* 20:*9*
**door** 20:*9* 29:*2*
**downsized** 26:*22*
**draconian** 35:*8, 23, 23, 24*
**drafted** 34:*22*
**Drug** 13:*6, 17, 21*
**due** 10:*16* 31:*10*

**< E >**
**earlier** 13:*24*
**early** 27:*1*
**easier** 22:*25*
**efforts** 38:*23*
**either** 28:*19* 32:*20*
**elaborate** 24:*10*
**elaboration** 20:*2*
**Electronic** 40:*5, 25*
**element's** 34:*1*
**eligibility** 34:*24*
**eligible** 6:*23* 34:*19, 20, 24* 35:*9, 16*
**employed** 40:*12*
**employment** 21:*21* 27:*25*
**enacted** 38:*11*
**enforce** 6:*2*
**Enforcement** 13:*6, 17, 21*
**engage** 24:*7*
**engaged** 4:*18* 31:*1, 3* 32:*17*

36:*23*
**entered** 7:*11*
**entirety** 28:*6*
**entitled** 28:*13*
**Equity** 16:*14*
**especially** 7:*5*
**Esq** 1:*1, 1*
**essentially** 4:*17*
**estate** 5:*15, 19*
**et** 37:*14*
**EVE** 1:*1* 9:*19*
**evict** 10:*22*
**eviction** 11:*3, 4, 6* 16:*22* 20:*5*
**evidence** 15:*12*
**EVIDENTIARY** 1:*1* 3:*4*
**EXAMINATION** 9:*11* 19:*2, 7*
**examine** 38:*20*
**Excuse** 22:*16*
**excused** 29:*23*
**Exhibit** 2:*15* 14:*12* 15:*8, 11, 12*
**exhibits** 29:*13, 16*
**expand** 35:*7*
**expansion** 36:*12*
**expect** 3:*25* 4:*21* 5:*1, 11*
**expected** 5:*5*
**expenses** 13:*23*
**experience** 26:*17*
**expires** 10:*13* 40:*20*
**explain** 27:*18*
**explanatory** 15:*14*
**express** 33:*24*
**extend** 36:*16*
**extended** 8:*23*
**extending** 36:*14*
**eyes** 38:*15*

**< F >**
**face** 38:*23*
**faced** 11:*21*
**fact** 6:*14* 16:*3* 19:*21* 26:*20* 38:*14* 39:*1*
**facts** 3:*21, 23, 24*
**factual** 29:*12*
**factually** 30:*22*
**faith** 25:*17* 28:*6* 32:*4, 12* 33:*2, 17*
**false** 35:*10*
**family** 8:*22, 23* 28:*22* 35:*11, 14*
**far** 36:*14*
**February** 6:*12*

19:*15*
**FED.R.BANKR.P** 1:*1*
**federal** 4:*19* 5:*16*,
*16* 6:*4* 13:*6* 31:*18*,
*20*, *22* 33:*5*, *9*, *9*, *18*
*34:6*, *16* 35:*2*, *3*, *7*,
*25* 36:*12*, *13* 37:*6*,
*6*, *7*, *10*, *13*, *18*, *22*,
*22* 38:*12*
**federalism** 34:*15*
*35:7* 36:*11*
**feel** 28:*13* 29:*6*
**fees** 11:*7*
**feet** 4:*24* 5:*2*
*10:4* 12:*1*
**fell** 26:*7*
**Fifty-seven** 27:*5*
**figures** 21:*10*
**file** 4:*14*, *15* 6:*19*
*15:6* 17:*19*, *22*, *23*
*20:15* 27:*18*
**filed** 5:*12* 6:*11*, *12*,
*22* 7:*3*, *6*, *12* 8:*2*
*10:16* 12:*16* 14:*21*,
*22* 15:*1*, *3* 17:*3*, *18*
*19:14*, *18* 26:*1*
*30:11* 31:*10*
**filing** 10:*21* 11:*17*
*21:16*, *17*
**finally** 36:*12*
**finances** 28:*23*
**financial** 8:*24*
*14:21* 15:*4* 20:*16*
*21:18* 31:*12*
**financially** 40:*14*
**find** 20:*7*, *10* 27:*24*
**first** 3:*19* 15:*24*
*16:12* 19:*4*, *11*
*30:7*, *18* 33:*1*
**five** 33:*22*
**five-year** 8:*8*
**folks** 35:*15*
**follow** 36:*20*
**following** 23:*9*
**foot** 12:*8*
**footage** 23:*6*
**forbidden** 32:*5*
*33:3*, *5*, *18* 37:*2*
**forced** 27:*21*
**forecloses** 32:*7*
**foregoing** 40:*7*
**forgotten** 34:*9*
**Form** 6:*21*
**forward** 9:*7* 27:*17*
*29:1*
**FRANK** 1:*1* 2:*10*
*3:3*, *16* 9:*6*, *9*, *15*
*22:21* 23:*4*, *15*

24:*6* 25:*18*, *25*
*28:5* 29:*5*
**fresh** 7:*2* 8:*25*
*28:13*, *25* 29:*3*
*34:25* 38:*15*
**front** 14:*13*
**full** 8:*5* 9:*13*
**fully** 20:*19*
**fund** 24:*12*, *13*
**funded** 5:*23* 37:*25*
**further** 18:*22* 20:*2*
*29:9*, *17* 36:*19*
*38:3*, *5* 40:*11*, *14*

**< G >**
**gentlemen** 20:*7*
**George** 17:*22* 18:*8*
*26:8*
**getting** 19:*9* 32:*11*
*34:6*
**give** 7:*10* 19:*1*, *6*
*21:9* 30:*5* 38:*2*
**given** 8:*25* 18:*9*
*35:18*
**go** 3:*19* 8:*10* 9:*3*
*10:20* 19:*1*, *6*
*21:20* 29:*2* 30:*7*, *9*
*32:23* 34:*7*
**goal** 26:*6*
**goes** 39:*1*
**going** 8:*21* 9:*22*
*13:2* 14:*12*, *19*
*15:8* 17:*7*, *19*, *22*
*18:4*, *4* 19:*11*
*20:9*, *12* 30:*10*
*38:8*
**Good** 3:*11*, *18*
*28:6* 32:*4*, *12*
*33:2*, *17*
**gosh** 23:*11*
**gotten** 22:*25*
**Government** 23:*20*
*24:3*, *3* 31:*21*
**graduate** 27:*9*
**grant** 24:*3* 38:*6*
**Group** 5:*14* 7:*5*, *8*,
*13* 10:*6*, *8*, *17*, *22*,
*25* 11:*7*, *12*, *18*
*12:5* 13:*25* 16:*20*
*17:12* 18:*18* 20:*1*,
*4*, *19*, *23* 26:*14*
*31:12*, *13*
**grow** 5:*3* 12:*10*
*13:3*, *7* 33:*13*
**grower** 5:*6*
**growing** 5:*17*
*13:25*
**grown** 12:*12*

**grows** 31:*7*
**GRUESKIN** 1:*1*
**guess** 3:*20* 18:*1*
**guesstimate** 28:*1*
**guys** 26:*23*

**< H >**
**happen** 25:*20*
**happened** 19:*25*
*20:3*
**hear** 4:*11* 19:*4*
**heard** 25:*9* 38:*9*
**HEARING** 1:*1* 3:*4*
*19:21* 40:*13*
**heart** 22:*19*
**HEIZER** 1:*1*
**held** 6:*2*
**helps** 34:*15* 38:*23*
**heroin** 35:*2*
**hired** 20:*13*
**hiring** 28:*3*
**history** 35:*5*
**Holding** 15:*17*
**Home** 16:*14*
**honest** 25:*15*
**honestly** 4:*2*
**Honor** 3:*11*, *15*, *22*
*4:13*, *15* 6:*8*, *10*
*9:5* 15:*8*, *10* 18:*22*
*29:19*, *25* 30:*10*
*32:22* 36:*20* 37:*19*
**HONORABLE** 1:*1*
**hope** 19:*10*
**HOWARD** 1:*1*
**husband** 3:*16*
*22:18*

**< I >**
**idea** 24:*5* 25:*13*
**illegal** 32:*7*
**inappropriate** 34:*7*
**InBev** 26:*19*
**includes** 37:*6*
**including** 26:*13*
**income** 5:*7*, *8*, *10*
*6:17* 7:*20* 13:*23*,
*24*, *25* 14:*2*, *3*, *7*, *10*
*18:16* 21:*21* 22:*1*,
*1*, *5*, *7*, *9*, *11* 23:*3*
*32:6*, *9* 35:*12*, *13*
**incurred** 16:*16*
**indicated** 17:*6*
**indication** 24:*2*
**industry** 27:*14*
*31:1*, *4*
**ineligible** 8:*16*
*27:16*
**influence** 25:*4*

**information** 10:*21*
*14:23* 21:*2*
**inherent** 33:*8*
**initially** 18:*8*
**inquired** 23:*24*
**inspected** 23:*10*
**inspectors** 23:*10*
**intend** 18:*2*, *11*, *14*,
*17*, *20*
**intending** 36:*22*
**intent** 28:*8*, *11*
**intention** 18:*4*
**interest** 7:*10*
**interested** 40:*15*
**interpret** 36:*2*
**interpretation**
*33:15* 34:*18*
**interpreted** 38:*13*
**interstate** 36:*4*
**intervene** 31:*21*
**intrastate** 36:*4*
**involved** 31:*8*
**issue** 4:*1* 6:*23*
*36:6*
**issued** 6:*1* 13:*4*
*25:4*
**issues** 29:*12* 38:*17*
**its** 8:*19* 32:*16*
*37:21*

**< J >**
**job** 27:*12*, *13*, *25*
*38:14*
**Joe** 17:*1*
**John** 20:*12*
**joint** 6:*12*
**Jolene** 1:*1* 3:*13*
**Judge** 28:*21* 35:*25*
**judgment** 7:*9*
*11:9* 16:*21* 20:*4*
**judicially** 35:*11*
**JULY** 1:*1* 2:*2* 3:*1*
*22:24* 23:*1*
**jumping** 4:*6*
**jurisdiction** 36:*5*, *13*
**jurisdictions** 38:*11*
*39:4*
**justify** 21:*16*

**< K >**
**keep** 7:*25* 18:*20*
**key** 33:*3*
**kind** 33:*7*
**know** 8:*12*, *24*
*13:2* 17:*17*, *19*
*18:3*, *6* 20:*15*
*21:4*, *4*, *8* 25:*13*, *15*
*26:7*, *12* 27:*21*, *22*
*28:2*, *20*, *21* 30:*8*

31:*15*, *24*  33:*7, 7, 9, 12, 16, 23, 24, 25*  34:*9*  35:*1, 7, 9, 12, 15, 25*  36:*3, 6, 8, 12, 15*  37:*23*  38:*22*
**knowledge**  19:*17, 20*  21:*2*  23:*18, 21, 22*  24:*2*
**knows**  6:*11*
**Kopatich**  1:*1*  3:*13*

**< L >**
**lady**  13:*11*
**landlord**  5:*6*  31:*8*
**language**  33:*1*
**Larimer**  4:*23*  9:*23*  11:*25*  16:*3, 16*  17:*14*  18:*11, 11*
**law**  4:*19*  5:*16, 16*  6:*4*  8:*15*  23:*16*  29:*8*  31:*18, 22*  32:*5*  33:*3, 4, 5, 6, 9, 9, 12, 13, 18, 19, 20, 23, 25*  34:*6, 16, 19, 22, 23*  36:*12*  37:*3, 5, 5, 6, 6, 7, 7, 10, 10, 18, 18, 21, 22, 23*  39:*1*
**laws**  7:*22*  23:*9*  38:*11, 12, 13*
**lawsuit**  20:*1*  31:*12*
**lay**  4:*1*
**leaf**  14:*18*
**lease**  5:*18*  10:*10, 13*  11:*1*  18:*17, 20*  20:*6, 8*  31:*15*
**leased**  4:*24*  10:*6*  30:*25*  31:*2*
**leasing**  13:*24*  32:*16*
**leeway**  19:*1, 6*
**left**  20:*8*
**legal**  8:*13*  9:*2*  33:*13*
**legislative**  35:*5*  36:*15*
**length**  37:*11*
**level**  7:*11, 15*
**license**  13:*3, 9, 10*  24:*11*
**licensing**  7:*23*
**limit**  34:*23*  36:*22*
**line**  13:*20*
**Line,**  16:*14*
**listed**  7:*1*  15:*24*  16:*2, 20*  31:*13*
**litigated**  11:*15*  20:*24*  36:*6*

**litigation**  5:*12*  10:*17*  11:*22*
**little**  6:*1*  38:*20*
**live**  21:*22*
**living**  35:*13*
**LLP**  1:*1*
**loan**  16:*2, 11*
**local**  7:*22, 23*  33:*12*
**located**  4:*23*
**long**  13:*11*  26:*23*  27:*2*  28:*1*
**look**  8:*18*  14:*18*  15:*19*  33:*19, 23*  35:*22*  36:*15*  38:*15, 18*
**looked**  25:*9*  30:*8*
**looking**  28:*15, 25, 25*  29:*1*  36:*8*
**Lopez**  15:*25*  16:*4, 8*
**lot**  26:*23*
**Lourdes**  7:*8*  15:*24*  16:*4, 8*  20:*3, 13*  26:*14*

**< M >**
**manage**  26:*9*
**Marama**  30:*18*
**marijuana**  4:*18, 25*  5:*3, 7, 17, 18, 23*  6:*23*  7:*18*  8:*13*  10:*8*  12:*10, 15, 19*  13:*4, 7*  14:*1*  18:*15*  25:*16*  30:*22*  31:*1, 4, 7, 9, 16*  33:*10, 14*  35:*3*  37:*14, 17, 24*
**market**  13:*2*
**matter**  3:*3*  8:*15*  40:*9*
**matters**  38:*24*
**mean**  8:*15*  26:*10*  28:*25*
**means**  6:*22*  32:*5*  33:*3, 5, 18*  37:*1, 2*  39:*3*
**meant**  36:*16*
**medical**  31:*16*
**meet**  19:*9*
**men**  28:*3*
**mention**  23:*25*  34:*7*
**mentioned**  4:*20*  9:*23*  10:*16*  21:*24*  24:*6, 6*
**merged**  20:*6*  26:*19*
**met**  34:*2*
**mind**  21:*7*

**minute**  22:*21*
**mislead**  28:*8, 11*
**mistake**  20:*12*
**modern**  34:*9*
**modest**  5:*9*
**month**  14:*5, 8*  21:*25*  23:*12*
**Motes**  1:*1*  3:*11, 11, 19, 22*  4:*8, 10, 13*  9:*4, 5, 12*  15:*8, 13*  18:*22, 24*  19:*25*  28:*19*  29:*17, 19, 24, 25*  30:*7, 10, 14*  33:*25*  36:*19, 20*
**MOTION**  1:*1, 1*  3:*5, 7*  4:*14, 16*  7:*24*  8:*2*  26:*2*  35:*18*  38:*2, 6*
**move**  19:*8*  27:*17*  29:*1*
**moved**  29:*14*

**< N >**
**name**  9:*13*
**National**  16:*12*
**nature**  27:*19*
**necessarily**  8:*5, 9, 15*
**necessity**  7:*3*
**need**  13:*10, 13*  21:*22*  22:*21*  38:*13, 22*
**needed**  13:*8*
**neither**  40:*11*
**never**  13:*18*  22:*20*  23:*19*  29:*2*
**nexus**  30:*22*  31:*5*
**non-marijuana**  27:*24*
**Notary**  40:*6*
**note**  37:*9*
**noted**  3:*2*  4:*15*  39:*6*
**Notice**  17:*4, 9*
**number**  21:*7, 14, 15, 16*
**numbers**  21:*12*

**< O >**
**OBJECTION**  1:*1, 1*  3:*6*  15:*10*
**obtained**  11:*9*
**obtaining**  23:*19*  32:*8*
**Obviously**  5:*20*  16:*24*  24:*25*  33:*14*  34:*3*  38:*6, 16*
**offer**  15:*8*

**offered**  17:*13*
**Office**  25:*13*
**Oh**  14:*17*  24:*18*
**Okay**  4:*9, 10, 13*  11:*17, 25*  12:*6, 8, 18, 23*  13:*1, 3, 14, 20, 23*  14:*4, 12, 17, 23*  15:*3, 18, 21*  16:*10, 14, 19, 24*  17:*3, 16, 25*  18:*7, 22*  19:*17, 21, 25*  21:*6, 9, 19, 23*  22:*7, 13, 21, 23*  23:*3, 15, 19, 23*  24:*2, 6, 16, 19, 24, 24*  25:*3, 8, 11, 18, 25*  26:*13, 16*  27:*4, 9, 16*  28:*5, 11, 13, 18*  29:*20*  38:*8*
**old**  28:*3*
**once**  12:*12*  23:*12, 25*
**ongoing**  7:*14*  22:*24*
**open**  8:*1*
**Opening**  2:*2, 2*  4:*11*
**operate**  12:*7*
**operates**  7:*18*
**Opinion**  5:*25*  22:*17*  30:*21*  32:*19*  37:*12, 20*
**opportunity**  9:*3*  29:*4*
**opposed**  25:*18*  26:*5*
**opposing**  7:*24*
**opposition**  4:*16*
**opted**  11:*22*
**option**  27:*21*
**order**  16:*16*
**ORDERED**  1:*1*
**original**  10:*25*  20:*6*
**originally**  17:*3, 18*  34:*21*
**outcome**  40:*15*
**outright**  8:*22*
**outside**  24:*14, 17*
**overturning**  8:*19*
**owe**  16:*3*  21:*8, 9*
**owed**  26:*13*
**owned**  26:*20*  30:*24*
**owns**  7:*17*

**< P >**
**P.M**  1:*1*  3:*2*  29:*23*  39:*6*
**PAGE**  1:*1*  2:*2*  15:*16, 18, 19*  16:*12,*

*19* 32:*18*
**papers** 38:*24*
**paperwork** 17:*23*
**park** 21:*12*
**part** 5:*23* 11:*6*
*19:2, 5, 7* 32:*9*
*33:4*
**particular** 38:*13*
**parties** 3:*20* 6:*21*
*31:17, 21* 40:*12*
**passed** 6:*22*
**passive** 6:*17*
**Patients** 5:*14* 7:*5,*
*8, 13* 10:*6, 8, 17, 22,*
*25* 11:*7, 12, 18*
*12:4* 13:*25* 16:*20*
*17:12* 18:*17* 20:*1,*
*3, 19, 23* 24:*12, 12*
*26:13* 31:*11, 13*
**PAUL** 1:*1*
**pay** 7:*4, 13* 8:*7*
*18:5* 33:*21*
**paying** 20:*10*
**payment** 5:*9, 9*
*28:16* 33:*22*
**pension** 5:*10* 6:*17*
*14:7* 22:*1, 3*
**people** 34:*13* 36:*22*
**percent** 23:*13*
*24:19, 21*
**perfect** 34:*14*
**personnel** 1:*1*
**Petition** 7:*3* 14:*20*
*15:4*
**phonetic** 7:*8* 15:*25*
**physically** 26:*25*
**pick** 12:*19*
**place** 30:*18* 32:*13*
**PLAINTIFF'S** 9:*9*
**plan** 5:*22* 8:*8*
*28:16* 32:*3, 8, 11*
*33:2, 21, 22* 36:*25*
*37:2, 5, 24*
**plants** 5:*19* 12:*15,*
*21*
**pleadings** 4:*17*
*30:11*
**Please** 9:*7, 10, 13*
*12:3*
**point** 17:*25* 18:*16*
*20:14* 32:*25* 33:*16*
*34:3* 35:*3*
**points** 36:*21*
**portion** 32:*6*
**position** 29:*15*
*32:14, 22*
**possess** 35:*1, 2*
**possession** 12:*15*
*37:13, 24*

**possibility** 20:*18*
*32:8*
**possible** 36:*9*
**possibly** 21:*16*
**power** 35:*7* 36:*1*
**power's** 34:*10*
**practical** 27:*20*
**practice** 32:*16*
**precedence** 35:*18*
**preclude** 36:*9*
**predecessor** 27:*13*
**preemption** 37:*12*
**prepared** 29:*13*
**PRESENT** 1:*1*
**pretty** 4:*1* 7:*12*
*22:19* 28:*24*
**prevents** 33:*20*
**previous** 8:*2, 19*
*26:16* 38:*17*
**previously** 26:*1*
**PRICE** 1:*1*
**primarily** 7:*7*
**principal** 6:*6*
**principles** 30:*20*
*36:11*
**Prior** 10:*21* 11:*17*
*16:19*
**pro** 20:*12*
**probably** 3:*25*
*21:4* 27:*22, 22*
*28:4*
**problem** 22:*24*
**proceeding** 11:*6*
*16:22*
**Proceedings** 1:*1*
*40:9*
**proceeds** 5:*23*
**process** 23:*21*
**produced** 1:*1*
**product** 24:*13*
**prohibited** 34:*11*
**project** 16:*16*
**properly** 6:*19*
**property** 4:*22, 23*
*5:19, 20* 9:*22*
*16:2, 5, 7, 11, 17*
*17:14*
**propose** 37:*5*
**proposed** 32:*4*
*33:2, 17* 37:*1, 2*
**prosecute** 34:*23*
**prospect** 11:*22*
*32:11*
**protection** 8:*7*
**protections** 6:*2*
**provide** 14:*23*
*20:2* 38:*23*
**provides** 32:*3*

**provision** 36:*1, 2*
**provisions** 37:*21*
**Public** 40:*6*
**purchase** 16:*4*
*17:13*
**purchased** 16:*7*
**purpose** 36:*15*
**purposes** 34:*23*
**PURSUANT** 1:*1*
**purview** 35:*4*

**< Q >**
**question** 3:*20*
*18:1* 29:*5*
**questions** 4:*5*
*18:22* 19:*7* 29:*9,*
*18*
**quite** 36:*24*
**quote** 33:*3*
**quoting** 34:*1*

**< R >**
**raised** 38:*17*
**read** 25:*5* 30:*8*
*33:1* 38:*24*
**reading** 34:*5*
**realize** 28:*18* 30:*19*
**really** 18:*3* 21:*4,*
*22* 25:*7, 9, 15* 28:*2*
*31:23, 25* 34:*5*
*37:21*
**reappear** 25:*23*
**reason** 6:*6* 15:*14*
*28:5* 35:*5*
**reasonable** 32:*11*
**rebuild** 16:*18* 29:*4*
**Rebuttal** 2:*2*
**recall** 15:*2* 17:*9,*
*12*
**receives** 14:*5* 22:*3,*
*6*
**recess** 39:*5*
**recognize** 14:*19*
**reconsider** 8:*18*
**record** 9:*14* 12:*4*
**recorded** 1:*1*
**recorder** 22:*3*
**recording** 40:*8*
**Recross** 2:*10*
**Redirect** 2:*10*
*29:19*
**referenced** 37:*19*
**referendum** 33:*12*
**REGARDING** 1:*1*
*3:5*
**registration** 13:*16,*
*21*
**regulate** 36:*5*
**reject** 18:*17*

**related** 4:*18* 5:*24*
*25:16* 40:*12*
**relief** 6:*24* 8:*3*
*11:22* 17:*21, 24*
*34:25* 36:*18*
**relies** 32:*9*
**remain** 32:*20*
**remaining** 26:*5*
**remains** 33:*11*
**remember** 17:*11*
**removed** 35:*4*
**renovate** 16:*16*
**renovation** 16:*10*
**Rent** 30:*20* 32:*2*
*37:19*
**rental** 16:*2*
**Rent-Rite** 5:*25*
*8:19* 25:*4* 30:*19,*
*23, 24* 31:*25* 32:*18*
*33:8* 34:*1, 3, 5, 15*
*35:17* 37:*12*
**repay** 18:*5, 9* 26:*6*
*28:25* 29:*3*
**repay,** 26:*10*
**repayment** 28:*16*
**Reporter** 40:*6, 25*
**reposition** 26:*24*
**representatives**
*10:24*
**REQUESTED** 1:*1*
**requesting** 6:*7*
*25:1*
**required** 6:*19*
*23:25* 37:*16*
**requirement** 32:*13*
**requirements** 7:*23*
*19:9*
**requisite** 24:*4*
**reserved** 34:*12*
**respect** 18:*10*
*38:3, 16*
**respectively** 34:*12*
**response** 3:*8*
**restate** 30:*10*
**result** 5:*12* 35:*7, 8,*
*24* 36:*10*
**retail** 13:*12* 24:*7*
**retain** 18:*11*
**retirement** 27:*1*
**review** 15:*1*
**reviewed** 25:*5*
**rid** 26:*23*
**right** 4:*3* 11:*19*
*12:19* 21:*21, 22*
*22:13* 30:*6* 38:*8*
**right-hand** 15:*19*
**rise** 31:*17*
**Rite** 30:*21* 32:*3*

37:*20*
**road** 27:*19*
**Rosania** 17:*1, 13*
 19:*23*
**roughly** 12:*22*
 14:*9* 27:*6*
**ruin** 20:*16* 21:*18*
**run** 35:*14*
**Running** 29:*5*

< S >
**sales** 24:*8*
**SARAH** 1:*1* 3:*4*
 9:*19*
**save** 4:*4* 8:*17*
**saying** 25:*14*
**says** 16:*14* 33:*6,
13* 34:*16, 18*
**Schedule** 7:*2*
 15:*16* 16:*20* 32:*17*
 33:*11*
**schedules** 6:*19*
 14:*20* 15:*4* 19:*18*
**se** 20:*12*
**seat** 9:*10*
**Section** 3:*6* 32:*3,
7, 12, 25*
**secured** 7:*4* 15:*17*
 28:*9*
**Security** 5:*9* 6:*18*
 14:*4* 22:*6*
**see** 38:*18, 20* 39:*1*
**seek** 11:*22* 17:*24*
 21:*20*
**seeking** 17:*16, 21,
25*
**seen** 29:*2*
**self** 15:*13* 27:*25*
**self-employment**
 7:*20* 22:*9*
**sell** 5:*3* 12:*13, 18,
21* 17:*7* 24:*7*
**selling** 13:*12* 14:*1*
**sells** 7:*18*
**send** 20:*16* 21:*18*
**September** 10:*11*
**sequel** 33:*8*
**Serafin** 1:*1* 3:*15,
15* 4:*5* 6:*9, 10*
 15:*10* 19:*1, 4, 10,
13* 29:*9* 30:*1, 3, 6*
 32:*23, 24* 36:*21*
 37:*9* 38:*1, 5*
**service** 1:*1*
**serving** 5:*6, 6*
**set** 20:*6*
**settle** 11:*18*
**She'll** 22:*20*

**shelter** 32:*15*
**shortly** 26:*22*
**shows** 25:*17*
**side** 23:*13*
**sides** 5:*25*
**signature** 40:*18*
**signed** 10:*10*
**significant** 7:*1*
 21:*5, 6, 14, 15, 16*
 32:*6*
**similar** 35:*12*
**similarly** 31:*2*
**simple** 4:*1* 7:*12*
**sir** 3:*18* 9:*21*
 10:*5* 11:*2, 5, 8, 14,
20, 24* 12:*9, 17, 22*
 13:*22* 14:*3, 6, 9, 17,
22, 22* 15:*5, 7, 21,
23* 16:*1, 13, 23*
 17:*8, 11, 15, 18*
 18:*16, 21, 25* 19:*20,
22* 20:*21* 21:*13*
 22:*2, 10* 23:*8, 18*
 24:*5, 23* 25:*2*
 26:*4, 15, 18* 27:*11,
15* 28:*7, 12, 15*
 29:*22*
**sit** 20:*9*
**site** 18:*15*
**situation** 21:*20, 23*
 22:*20* 28:*22, 22, 23*
 36:*16* 38:*14, 25*
 39:*1, 3*
**six** 21:*10*
**size** 12:*23*
**skirt** 26:*8*
**Social** 5:*9* 6:*17*
 14:*4* 22:*6*
**somebodies** 34:*24*
**sorry** 14:*17, 17*
 19:*4* 22:*16, 17, 22*
 27:*2*
**sought** 10:*22*
**sounds** 20:*17*
**source** 5:*8* 7:*19*
 14:*2, 3, 10* 18:*16*
 22:*5, 11*
**sources** 5:*7* 6:*17*
 21:*25*
**space** 5:*16* 13:*24*
 30:*25* 31:*3* 32:*16*
**specific** 27:*9, 12, 13*
**specifically** 18:*10*
 24:*22, 23*
**speed** 30:*9*
**spoke** 18:*8* 26:*7*
 31:*25*
**spouse** 6:*14* 25:*20*

**square** 4:*24* 5:*2*
 10:*3* 12:*1, 8* 23:*6*
**ss** 40:*2*
**SSD** 22:*6*
**stand** 4:*7*
**standpoint** 7:*12*
**start** 7:*2* 8:*25*
 28:*14, 25* 29:*3*
 32:*24* 34:*25*
**State** 7:*11, 14, 22,
23* 9:*13* 11:*6*
 20:*24* 23:*8, 15*
 24:*14, 17* 29:*7*
 33:*12, 12, 20, 23*
 34:*19* 37:*10, 14, 16,
18, 21, 22* 38:*12*
 39:*2* 40:*1, 7*
**stated** 13:*23* 29:*11*
**statement** 2:*2, 2,
2, 2* 4:*11* 14:*20*
 15:*4* 31:*12*
**statements** 6:*16*
**STATES** 1:*1, 1, 1*
 14:*15* 33:*10* 34:*10,
11, 12, 12*
**statute** 33:*4, 24*
 35:*4, 6* 36:*16, 24*
 37:*13, 14, 16*
**statute's** 33:*19*
**stay** 8:*8*
**steps** 35:*6*
**stipulate** 29:*13*
**stipulated** 3:*24*
**stipulation** 3:*23*
**Street** 4:*23* 9:*23*
 11:*25* 16:*3, 16*
 17:*14* 18:*11, 12*
**strike** 36:*1*
**stroke** 6:*14*
**struggle** 28:*4*
**stuck** 35:*19, 19*
**subject** 37:*11*
**submissions** 30:*8*
**submit** 35:*25* 36:*3*
**submitted** 38:*24*
**subsequent** 26:*2*
**Substance** 8:*14, 14*
 32:*18* 33:*11*
**Substances** 30:*23*
 33:*10* 34:*22* 36:*2,
13*
**substantial** 16:*10*
**successful** 36:*10*
**suffer** 35:*23*
**suggested** 17:*23*
**suggests** 35:*6*
**summarize** 30:*12*
 36:*8*

**Supplemental** 14:*15*
**support** 35:*14*
**suppose** 25:*17*
 36:*25* 37:*15*
**Supreme** 36:*7*
**Sure** 4:*8* 13:*18*
 28:*2* 29:*15*
**switched** 20:*14*
**sworn** 9:*8, 9*
**sympathetic** 31:*20*

< T >
**tab** 14:*16*
**take** 3:*9* 7:*10*
 21:*10* 28:*1* 38:*15,
18*
**taken** 35:*6* 40:*13*
**talk** 21:*23* 23:*3*
 32:*25*
**talked** 23:*4, 5*
**talking** 32:*1*
**TALLMAN** 1:*1*
**technicality** 35:*20*
**tell** 23:*7* 26:*16*
 28:*21*
**tenant** 5:*13, 18*
 20:*13* 23:*13* 31:*3,
11*
**tenants** 10:*25*
 20:*6, 8* 31:*1*
**test** 6:*22*
**testified** 19:*21*
 25:*25*
**testifies** 8:*12*
**testify** 4:*22* 5:*1, 5,
11* 6:*13, 15, 24*
 7:*17, 21* 8:*21*
**testifying** 24:*19*
**testimony** 3:*25*
 29:*21* 33:*16* 38:*23*
**Thank** 3:*14, 15*
 4:*13* 6:*8, 9, 10*
 9:*4, 10* 18:*23, 24,
25* 29:*17, 19, 20, 22,
25* 30:*1* 32:*22, 23,
24* 36:*18, 19* 37:*25*
 38:*1* 39:*5*
**thing** 37:*9*
**think** 3:*22* 15:*16*
 21:*24* 29:*12, 13, 14*
 30:*12, 20* 31:*23*
 32:*20* 33:*3, 14*
 34:*1, 4, 7, 14, 21*
 35:*10, 10, 14, 22*
 36:*1, 8, 21, 23, 24*
 37:*19*
**thought** 17:*19*
 27:*8*

**three**  6:*14*  8:*8*  21:*8, 9, 10*  33:*22*
**Time**  3:*2*  4:*4, 6*  7:*5*  12:*18*  18:*9*  26:*23*  39:*6*
**times**  11:*20*  21:*8, 9, 10*  34:*9*
**Title**  32:*3*
**titled**  15:*16*
**today**  3:*12*  8:*4*  24:*25*  25:*4, 18*  28:*18*  29:*5, 14*  33:*7*  38:*9, 23*
**told**  13:*8, 18*  18:*8*  26:*8*
**top**  16:*11*  34:*21*
**topic**  15:*15*
**total**  26:*10*
**training**  27:*13*
**TRANSCRIPT**  1:*1, 1, 1, 1, 1*
**transcription**  1:*1*  40:*8*
**tried**  11:*17, 18*  26:*24*
**trip**  19:*10*
**TRUSTEE**  1:*1*  2:*2, 2, 2*  3:*12*  4:*14, 15, 20*  6:*5, 7, 21*  7:*6*  9:*5*  14:*15*  15:*12*  16:*25*  21:*24*  24:*25*  28:*11*  29:*11, 14*
**Trustees**  29:*16*  32:*22*
**TRUSTEE'S**  1:*1, 1*  2:*10*  3:*5, 8, 9*  6:*16*  7:*24*  25:*13*
**try**  21:*20*  38:*14*
**trying**  20:*7*  26:*8, 9*
**turn**  14:*12*
**twice**  19:*9*  23:*12*
**two**  4:*23*  5:*5*  6:*16*  10:*3*  14:*1*  21:*25*  23:*4*  31:*17, 21*  39:*3*
**type**  22:*1*  27:*24*  29:*6*  34:*24, 25, 25*  35:*9*

**< U >**
**U.S**  3:*5, 8, 12*  4:*14, 15, 20*  6:*5, 7, 16, 20, 21*  7:*6, 24*  9:*5*  21:*24*  23:*20*  24:*3, 25*  25:*12*  28:*11*  29:*11, 13, 16*  32:*22*  34:*8, 8*  36:*6*
**U.S.C**  1:*1, 1*

**Uh-huh**  19:*24*  30:*13*
**unable**  6:*15*  7:*3*
**undergrad**  27:*10*
**understand**  16:*25*  17:*3, 6*  31:*19*
**understanding**  10:*10, 13, 24*  17:*8*  20:*24*
**understatement**  35:*24*
**understood**  36:*23*
**undisputed**  6:*13*  7:*15*
**unfortunately**  5:*7*
**unit**  10:*6*  11:*25*  12:*1, 5, 8, 10*  23:*5, 5*
**UNITED**  1:*1, 1, 1*  14:*15*  34:*11*
**units**  4:*23, 24*  10:*3*  23:*5*
**unlawful**  32:*16*
**unsecured**  7:*1, 4, 4*  8:*7*  28:*9*
**unsuccessful**  11:*4, 21*
**upheld**  35:*18*
**upper**  15:*19*
**USC**  32:*3*
**use**  21:*12*  33:*13*  37:*16*
**utilize**  32:*15*
**utilized**  5:*16, 17, 21*
**utilizes**  5:*3*

**< V >**
**vaguely**  17:*11*
**various**  38:*11*
**versus**  34:*19*  35:*17*
**violate**  4:*19*  5:*15*
**violates**  31:*18, 22*  37:*5*
**violation**  6:*4*  37:*1*

**< W >**
**W-2**  7:*19*  27:*25*
**wage**  7:*19*  22:*7*  35:*13*
**want**  7:*20*  15:*14*  23:*7*  26:*2*  28:*21*  29:*2, 3, 3, 4*  31:*24*
**wanted**  15:*15*
**wanting**  26:*25*
**warehouse**  30:*25, 25*
**way**  3:*21, 23*  19:*8*  27:*18*  30:*9*  32:*20*

**ways**  31:*19*
**WEDNESDAY**  1:*1*
**weight**  12:*23*
**well**  6:*17, 24*  7:*8, 23*  11:*5*  14:*16*  19:*7*  20:*5*  23:*14*  25:*22*  27:*7*  28:*24*  32:*2*  34:*14*  35:*12*  37:*17*  38:*8*
**went**  13:*9*  17:*21*  23:*10*
**We're**  3:*3*  8:*3, 8, 18, 24*  28:*25, 25*  29:*1*  30:*9*  36:*8*  38:*6, 8*
**we've**  16:*21*  23:*8*  30:*8, 11*  38:*9, 16*
**whereof**  40:*17*
**wholesale**  13:*9*  24:*11, 11*
**wife**  9:*19, 23*  11:*24*  14:*4*  17:*24*  19:*16, 19*  21:*20, 25*  22:*14, 16, 17, 19, 24*  25:*19*  28:*8*
**wife's**  21:*23*  22:*13*  28:*22*
**withdrew**  17:*9*
**Witness**  2:*10*  4:*7, 21*  9:*9*  18:*25*  28:*18*  29:*22, 23*  40:*17*
**witnesses**  29:*24*  30:*2, 3*
**word**  33:*4, 4, 6*  38:*3*
**wording**  33:*24*
**words**  16:*7*
**work**  6:*15*  11:*18*  22:*18, 20*  24:*13*  26:*16, 25*  27:*24*  35:*13*  38:*12, 16*
**worked**  26:*18*

**< Y >**
**yeah**  27:*8*
**year**  6:*1*  19:*15*  23:*1, 10, 12*  33:*22*
**years**  6:*14*  22:*3*  26:*19*