# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
## Honorable Howard R. Tallman

| | |
|---|---|
| In re: ) | |
| ) | |
| **FRANK ANTHONY ARENAS** and ) | Case No. 14-11406 HRT |
| **SARAH EVE ARENAS,** ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| ) | |

### ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
### AND THE DEBTORS' MOTION TO CONVERT

This case comes before the Court on *United States Trustee's Motion to Dismiss Debtors' Case under 11 U.S.C. §707(a)* (docket #17); and Debtor's *Motion to Convert Chapter 7 Case to One under Chapter 13 Pursuant to 11 U.S.C. §348(a) and* FED. R. BANKR. P. *1017(f)(2)* (docket #23).

## I. FACTUAL BACKGROUND

Mr. Arenas is engaged in the business of producing and distributing marijuana[1] on the wholesale level in the state of Colorado. According to his uncontradicted testimony, he possesses all of the required licenses and permits necessary to legally engage in his business under the laws of the state of Colorado. Mr. Arenas does not possess, and has not applied for, any type of license or permit from the Drug Enforcement Administration to allow him to lawfully operate his business of producing and distributing marijuana under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. (the "CSA").[2]

---

[1] "Marijuana" or "marihuana" means all parts of the plant of the genus cannabis whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or its resin, including marihuana concentrate.

COLO. CONST. art. 18, § 16.

[2] The CSA adopts the spelling "marihuana." As reflected in Colorado's constitutional provision, the two spellings are interchangeable. The CSA defines the term "marihuana" as

all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

21 U.S.C. § 802(16).

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

The Debtors jointly own a commercial building located at 2863 Larimer Street, Denver, Colorado (the "Property"). The building consists of two units. Mr. Arenas carries on his business operations in one of the units and the Debtors lease the other unit to a marijuana dispensary that operates under the name of Denver Patients Group, LLC ("DPG").

Mrs. Arenas suffered a stroke in 2011 and is disabled. Her income consists of a Social Security Disability benefit and a pension benefit. Those sources total approximately $3,000.00 per month. The remainder of the family's monthly income – $4,265.16 according to the Debtors' Schedule I – is derived from the lease with DPG and from the operation of Mr. Arenas' growing business.[3] There is no evidence that Mrs. Arenas participates in the growing business.

## II. DISCUSSION

The Court finds Mr. Arenas to be a candid and credible witness. In accordance with Mr. Arenas' uncontradicted testimony, the Court finds the Debtors' business operations and ownership and operation of their Property are not illegal under the laws of the state of Colorado and that the Debtors are in compliance with applicable state regulations. Mr. Arenas' testimony also establishes that his business operations and the Debtors' control over their Property are unlawful under the CSA. Both the Debtors' activity of leasing space to a marijuana dispensary and Mr. Arenas' cultivation of marijuana on the property makes the Debtors liable for criminal penalties under the CSA.

The United States Trustee (the "UST) moves to dismiss the Debtors' case for cause under 11 U.S.C. § 707(a). The UST bases his position largely on the analysis contained in the Court's prior case of *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799 (Bankr. D. Colo. 2012). The Debtor invites the Court to reexamine it's decision in the *Rent-Rite* case.

In *Rent-Rite*, the Court addressed issues concerning a chapter 11 debtor's activities with respect to medical marijuana – activities that are legal under Colorado law but that constitute criminal violations of the CSA. The case came before the Court on a creditor's motion to dismiss the debtor's chapter 11 reorganization case under § 1112(b) of the Bankruptcy Code. The Court held:

---

[3] The evidence is unclear whether Mr. Arenas conducts his growing operation personally, under a d/b/a, or through a corporate entity. However, that is not a distinction of consequence because a corporate form cannot be used to shield its owner from criminal liability. *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 630 (1983) ("the Court has consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies.").

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

>   Unless and until Congress changes [federal drug] law, the Debtor's operations constitute a continuing criminal violation of the CSA and a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime.

*Rent-Rite*, 484 B.R. at 805. The legal principles discussed in *Rent-Rite* apply with equal force to this case.

In *Rent-Rite* the Court found that the Debtor's operation of a warehouse that was partially rented to a tenant engaged in the cultivation of marijuana was a violation of the CSA. Specifically, the debtor violated 21 U.S.C. § 856(a)(2). That provision makes it unlawful to own or control premises that are knowingly used for the manufacture or distribution of a controlled substance.[4] Marijuana is classified as a Schedule I controlled substance under the CSA. In addition to the Debtors' ownership of premises that are used in the production and distribution of a controlled substance, Mr. Arenas' growing operation violates the CSA. *See* 21 U.S.C. § 841(a)(1) ("Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."). *See, also, U.S. v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483 (2001).

Cases like this case and *Rent-Rite* arise because of the conflict between the marijuana policies reflected in state law and the federal marijuana prohibition. The Debtor has provided the Court with a law review article that speaks to some of the ramifications of those conflicting policies. Robert A. Mikos, *On the Limits of Supremacy: Medical Marijuana and the States' Overlooked Power to Legalize Federal Crime*, 62 Vand. L. Rev. 1421 (2009). The Court has read Professor Mikos' article with some interest. The article was written in 2009, prior to any state legalizing recreational marijuana. At the time, 13 states had legalized medical marijuana.

Professor Mikos recognizes that, even though many courts and commentators frequently view the conflict in terms of Constitutional preemption of state law by the federal law, there is no such preemption and the states are perfectly free to legalize and regulate the use of medical marijuana. *See also Rent-Rite*, 484 B.R. at 804-805.

Professor Mikos' analysis "suggests that as long as states go no further [than passive legalization] – and do not actively assist marijuana users, growers, and so on – they may continue to look the other way when their citizens defy federal law." Mikos at 1424. As a result, "[t]he

---

[4] A controlled substance is defined in the CSA as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986." 21 U.S.C. § 802(6).

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

federal ban may be strict – and its penalties severe – but without the wholehearted cooperation of state law enforcement authorities, its impact on private behavior will remain limited. Most medical marijuana users and suppliers can feel confident they will never be caught by the federal government." *Id.*

The point that Professor Mikos makes goes to the heart of the Debtors' dilemma. He does not suggest that state legalization somehow nullifies federal law and prevents federal enforcement of the CSA within state borders. To the contrary, he frankly recognizes that marijuana production and distribution continue to be federal crimes even in those states that have legalized those activities. State legalization works, in his view, only because it is the states that have been on the forefront of enforcement of marijuana laws. Once the states decriminalize marijuana and stop enforcing a prohibition on its distribution and use, the federal government lacks the resources to fill that void. *Id.*

Nothing in Professor Mikos' article supports the notion that the Debtors are not involved in an activity that is a federal crime. It may be extremely unlikely that they will ever be arrested and prosecuted for their violations of the CSA.[5] Nonetheless, those violations of federal law create significant impediments to the Debtors' ability to seek relief from their debts under the federal bankruptcy laws in a federal bankruptcy court.

Under our federal system of government, a state is perfectly free to, as Professor Mikos puts it, "continue to look the other way when their citizens defy federal law." *Id.* By the same token, the states have no power to require any branch of the federal government to do the same. A state citizen that chooses to defy one federal law puts himself in an awkward position when he

---

[5] The U.S. Department of Justice has issued guidance to U.S. Attorneys that identifies eight federal law enforcement priorities including "[p]reventing the distribution of marijuana to minors; . . . [p]reventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels; [and] [p]reventing the diversion of marijuana from states where it is legal under state law in some form to other states . . . ." Memorandum from James M. Cole, Deputy Attorney General, on Guidance Regarding Marijuana Enforcement, August 29, 2013. U.S. Attorneys are advised that "enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing marijuana-related activity . . . ." so long as those federal law enforcement priorities are adequately protected by state regulations. *Id.* The same memorandum goes on to emphasize that "[t]his memorandum does not alter in any way the Department's authority to enforce federal law. . . . Neither the guidance herein nor any state or local law provides a legal defense to a violation of federal law, including any civil or criminal violation of the CSA." *Id.* Thus, the Justice Department is unlikely to prosecute violations of the CSA in Colorado where the conduct in question is legal under Colorado state law. But, that is a policy that represents an exercise of prosecutorial discretion and is subject to change at any time. Moreover, the fact that a crime is not prosecuted makes it no less of a crime.

Page 4 of 9

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

seeks relief under another federal statute – especially when granting that relief directly involves a federal court in administering the fruits and instrumentalities of federal criminal activity.

Here the United States Trustee seeks dismissal of the Debtors' case under § 707(a). Both § 1112(b) – relied upon by the creditor in *Rent-Rite* – and § 707(a) provide that a case may be dismissed "for cause." The Debtors have also filed a motion under § 706(a) to convert their case to a case under chapter 13.

A. Motion to Dismiss

The fundamental bargain underpinning a chapter 7 consumer liquidation case is that a debtor turns over his non-exempt assets to a chapter 7 trustee so those assets may be liquidated for the benefit of creditors. In return, the debtor receives a discharge of his dischargeable debts. Here, the Debtors' chapter 7 trustee (the "Trustee") cannot take control of the Debtors' Property without himself violating §856(a)(2) of the CSA. Nor can he liquidate the inventory of marijuana plants Mr. Arenas possessed on the petition date[6] because that would involve him in the distribution of a Schedule I controlled substance in violation of § 841(a) of the CSA. The Court finds that administration of this case under chapter 7 is impossible without inextricably involving the Court and the Trustee in the Debtors' ongoing criminal violation of the CSA.

There is some indication that the Debtors' Property represents an asset of value for the bankruptcy estate.[7] But it is an asset that cannot be administered for the benefit of creditors. For the Trustee to take possession and control of the Debtors' Property and marijuana inventory would directly involve him in the commission of federal crimes. To allow the Debtors to remain in a chapter 7 bankruptcy case under circumstances where their Trustee is unable to administer valuable assets for the benefit of creditors would allow them to receive discharges without turning over their non-exempt assets to the Trustee. That would give the Debtors all of the benefits of a chapter 7 bankruptcy discharge while allowing them to avoid the attendant burdens. The impossibility of lawfully administering the Debtors' bankruptcy estate under chapter 7 constitutes cause for dismissal of the Debtors' case under 11 U.S.C. § 707(a).

B. Motion to Convert

The Debtors are not entitled to convert their case to a case under chapter 13 because their reorganization would be funded from profits of an ongoing criminal activity under federal law and

---

[6] Mr. Arenas testified that he had approximately 25 plants that he valued at $250.00 each.

[7] The Trustee withdrew his report of no distribution in this case and Mr. Arenas testified that he was aware that Denver Patients Group, LLC, had been in discussion with the Trustee about purchasing the Property.

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

would necessarily involve the Chapter 13 Trustee in administering and distributing funds derived from the Debtors' violation of the CSA.

Ordinarily, a chapter 7 case may be converted to a chapter 13 case at any time. 11 U.S.C. § 706(a). The Debtors seek to convert their case to a case under chapter 13 as an alternative to the Trustee selling their Property for the benefit of creditors.

The Supreme Court made clear in the case of *Marrama v. Citizens Bank*, 549 U.S. 365 (2007), that bankruptcy courts must give full effect to § 706(d), which provides that "a case may not be converted to a case under another chapter . . . unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). In *Marrama*, the Supreme Court found the debtor had committed acts that constituted cause for dismissal of a chapter 13 case under 11 U.S.C. § 1307(c) for bad faith. Because there was cause to dismiss the case under § 1307(c), the Supreme Court found that the debtor was ineligible to be a debtor under chapter 13 and § 706(d) required his motion to convert his case to be denied. *Marrama*, 549 U.S. at 373-74 ("In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13."). In *Marrama*, it was the debtor's pre-petition bad faith that provided cause for dismissal under § 1307(c).

Here, there is cause for dismissal § 1307(c) on account of the Debtors' bad faith due to their inability to propose a confirmable chapter 13 plan.[8] Section 1325 of the Bankruptcy Code sets forth the requirements that must be satisfied for a court to confirm a proposed chapter 13 reorganization plan. Among the other requirements, a court must find that a debtor's plan "has been proposed in good faith and *not by any means forbidden by law*." 11 U.S.C. § 1325(a)(3) (emphasis added). Here, the evidence is that any plan of reorganization the Debtors might propose would be funded by a means forbidden by law, thus precluding the Court from confirming any chapter 13 plan the Debtors might propose. Any plan proposed by the Debtors would be executed with income derived from the Debtors' production and sale of a Schedule I controlled substance and from leasing space in their Property, which is used by their tenant for the distribution of a Schedule I controlled substance. Those activities are unlawful under the CSA. Any plan proposed by the Debtors would necessarily be executed by unlawful means and the Court would be unable to

---

[8] "'Bad faith' sounds like a subjective inquiry . . .. Despite its sound, however, 'bad faith' has an objective meaning as well as a subjective one." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). The Court does not suggest that the Debtors are animated by an improper motive and are *subjectively* acting in bad faith. The Debtors are seeking relief to which they would surely be entitled but for the unique circumstances of this case. But those circumstances – the impossibility of confirming a chapter 13 plan – make it objectively unreasonable to seek chapter 13 relief and establish the Debtors' *objective* bad faith.

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

find, under § 1325(a)(3), that their plan is "proposed in good faith and *not by any means forbidden by law*."

There are cases holding that the identical chapter 11 confirmation requirement that "[t]he plan has been *proposed* . . . not by any means forbidden by law," 11 U.S.C. § 1129(a)(3) (emphasis added) "focuses not on the terms of the plan and its means of implementation but on the manner in which the plan 'has been *proposed*.'" *In re Irving Tanning Co.*, 496 B.R. 644, 660 (B.A.P. 1st Cir. 2013). *See also In re Sovereign Group, 1984-21 Ltd.*, 88 B.R. 325, 328 (Bankr. D. Colo. 1988). Yet – at least in the chapter 13 context – the requirement, appearing in the same sentence, that "[t]he plan has been *proposed* in good faith . . . ," 11 U.S.C. § 1325(a)(3) (emphasis added), is based on a totality of the circumstances. *See In re Cranmer*, 697 F.3d 1314, 1318 (10th Cir. 2012) ("The good faith determination is made on a case-by-case basis considering the totality of the circumstances.").

The totality of the circumstances good faith analysis, employed by the courts under § 1325(a)(3), goes far beyond a narrow procedural reading to the term "proposed." *See, e.g., In re Melander*, 506 B.R. 855, 870 (Bankr. D. Minn. 2014) (plan not proposed in good faith where plan found to constitute an abuse of the spirit of Chapter 13 due to the excess expenses claimed); *In re Tucker*, 500 B.R. 457, 463-64 (Bankr. N.D. Miss. 2013) (modification not proposed in good faith where debtor sought to surrender uninsured collateral after it sustained fire damage); *In re Rodriguez*, 487 B.R. 275, 285-86 (Bankr. D. N.M. 2013) (plan not proposed in good faith where debtor manipulated the Bankruptcy Code to discharge ex-spouse claim based on misappropriation of retirement funds while debtor contributes over $700.00 monthly to his own retirement); *In re Amos*, 452 B.R. 886, 894 (Bankr. D. N.J. 2011) (plan not proposed in good faith where debtors proposed plan to pay $0 to unsecured creditors while retaining and making mortgage payments on second home).

In § 1325(a)(3) the word "proposed" refers to two separate clauses within the same sentence. As a result, the subsection creates two separate conditions to confirmation: 1) that the plan be *proposed* "in good faith" and 2) that the plan be *proposed* "not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986) (citations and internal quotes omitted). Here, the Court is not construing a word used in different parts of a statute but is construing a single word that refers to two separate clauses within a single sentence. It would be anomalous to find that Congress intended for the word "proposed" to carry a broad "totality of the circumstances" meaning with respect to the "good faith" clause and a limited procedural meaning in connection with the "not by any means prohibited by law" clause.[9] The Court concludes that § 1325(a)(3)

---

[9] Granted, that seems to be how some courts have construed the identical phrase appearing
(continued...)

ORDER ON THE UNITED STATES TRUSTEE'S MOTION TO DISMISS
AND THE DEBTORS' MOTION TO CONVERT
Case No. 14-11406 HRT

requires it to examine the lawfulness of a plan's means of implementation in order to satisfy the requirement that "the plan has been proposed . . . not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

The Court need not speculate or make uncertain predictions of future events to conclude that the Debtors are unable to lawfully propose a confirmable plan. Mr. Arenas testified that Mrs. Arenas' combined monthly income from Social Security Disability and from a pension benefit is just less than $3,000.00 per month. Mr. Arenas' income, reflected on Schedule I of the Debtors' schedules, is listed as $4,265.16. That consists of lease payments from Denver Patients Group, LLC, a marijuana dispensary, and income from Mr. Arenas' marijuana growing business. Both of Mr. Arenas' sources of income violate the CSA. Only Mrs. Arenas income of approximately $3,000.00 represents funds that are lawful under federal law. The Debtors' reported monthly expenses exceed $7,000.00. The evidence persuades the Court that the Debtors cannot, under the present circumstances, feasibly propose a chapter 13 plan that does not depend upon income from sources that are illegal under the CSA for the plan's execution.

Because the Debtors lack any legal means of proposing a confirmable plan, the Court finds that they are acting in bad faith. Under the rationale of the *Marrama* case, the Debtors are ineligible for relief under chapter 13 and their motion to convert must be denied under 11 U.S.C. § 706(d).

C. Constitutional Issues

The Debtor argues that the CSA violates the Tenth Amendment to the U.S. Constitution. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

In the case of *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court considered whether the CSA violated the Commerce Clause of the U.S. Constitution. U.S. CONST. art. I, § 8. Users and growers of marijuana in the state of California sought to enjoin enforcement of the CSA with respect to purely intrastate activities that are legal under California's Compassionate Use Act of 1996. CAL. HEALTH & SAFETY CODE § 11362.5 et seq. (West). The Supreme Court held that "the power vested in Congress by Article I, § 8, of the Constitution '[t]o make all Laws which shall be necessary and proper for carrying into Execution' its authority to 'regulate Commerce with foreign Nations, and among the several States' includes the power to prohibit the local cultivation and use

---

⁹(...continued)
in 11 U.S.C. § 1129(a)(3) as it applies to chapter 11 cases. But, because this is a case under chapter 13, the Court expresses no opinion as to how that language should be construed in a chapter 11 context.

of marijuana in compliance with California law." *Raich*, 545 U.S. at 5, 22. In other cases, the Supreme Court "long ago rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981). Since Congress acted within its Constitutional powers under the Commerce Clause when it enacted the CSA, it did not violate the Tenth Amendment. *See Raich v. Gonzales*, 500 F.3d 850, 867 (9th cir. 2007) ("Thus, after *Gonzales v. Raich*, it would seem that there can be no Tenth Amendment violation in this case. Raich concedes that recent Supreme Court decisions have largely foreclosed her Tenth Amendment claim.").

## III. CONCLUSION

The Court regards the legal analysis necessary for the resolution of this case to be relatively straight-forward while recognizing that the result is devastating for the Debtors. The Debtors' need the relief that would otherwise be available to them under the Bankruptcy Code. It is relief that, under the circumstances, the Court cannot provide. As a federal court, the Court cannot force the Debtors' Trustee to administer assets under circumstances where the mere act of estate administration would require him to commit federal crimes under the CSA. Nor can the Court confirm a reorganization plan that is funded from the fruits of federal crimes. The Debtors' ownership and control over premises that are used in the production and distribution of a Schedule I controlled substance as well as Mr. Arenas' direct involvement in the production and sale of a Schedule I controlled substance violate the CSA. The Debtors' activities preclude the orderly operation of a case under either chapter 7 or chapter 13 of the Bankruptcy Code. Because the Court finds cause to dismiss the Debtor's chapter 7 case under § 707(a) and because the Court cannot permit the Debtors to convert their case under § 706(a), the case must be dismissed. Therefore, it is

**ORDERED** that Debtor's *Motion to Convert Chapter 7 Case to One under Chapter 13 Pursuant to 11 U.S.C. §348(a) and FED. R. BANKR. P. 1017(f)(2)* (docket #23) is DENIED. It is further

**ORDERED** that the *United States Trustee's Motion to Dismiss Debtors' Case under 11 U.S.C. §707(a)* (docket #17) is GRANTED.

Dated this __28th__ day of August, 2014.

                                                            **BY THE COURT:**

                                                            Howard R. Tallman, Judge
                                                            United States Bankruptcy Court